THE PEOPLE ex rel. REUBEN N. WALDORF, Appellant, *v.* THE POLICE COMMISSIONERS OF THE CITY OF ALBANY, Respondent.

Under the charter of the city of Albany (chap. 77, Laws of 1870, as amended by chap. 443, Laws of 1886), the police commissioners have authority to fix the salaries of patrolmen within the limits of the maximum sum ($900) specified in the charter.

Said commissioners have no authority however to divide the patrolmen into two or more distinct grades with different salaries attached to each grade; nor have they a right to discriminate as between the patrolmen, paying to some larger salaries than to others.

No such authority is given by the provision of the charter (§ 20, tit. 12, chap. 77, Laws of 1870), giving to the commissioners power to enact "by-laws, ordinances, rules and regulations."

*It seems* the commissioners have power to adopt such rules and regulations defining the duties of the members of the force, or providing for their discipline as the board shall deem proper, and the right to detail any

patrolman or set of patrolmen to any special or general work within the fair range of police duty.

The said commissioners having fixed the salaries of patrolmen at $900, passed resolutions establishing "for special day or night duty a police grade to be known as the veteran grade," and providing that after ten years service, by vote of a majority of the board, any patrolman might be assigned to duty in that grade at a salary of $600.

In pursuance of these resolutions the relator, who had served as patrolman for over ten years, was, without his consent, placed in the veteran grade, but thereafter was assigned to and performed the same duties as before. In proceedings by *mandamus* to compel the commissioners to certify and allow to the relator the full salary fixed for patrolmen *held*, that said resolutions were unauthorized and the relator was entitled to the writ.

*Riley* v. *Mayor, etc.* (96 N. Y. 331) distinguished.

(Argued January 31, 1888; decided February 28, 1888.)

APPEAL from order of the General Term of the Supreme Court in the third judicial department, entered upon an order made December 5, 1887, which affirmed an order of Special Term denying an application for a *mandamus*, directing the defendant to audit, allow and certify the relator's claim for salary as patrolman at the rate of $900 a year.

The material facts are stated in the opinion.

*E. Countryman* for appellant. The police commissioners had power to remove the relator for cause or retire him on a pension for disability incurred in the performance of duty, but they could not create any new or additional grade or rank in the force with a salary lower than the other members of the regular force. (Laws of 1870, pp. 199, 200, 201, 204, §§ 2, 9, 20; Laws of 1885, p. 509, §§ 1, 2.) The board had no power to reduce the salary of the relator as fixed by law. (Laws of 1886, p. 684, § 1; *People ex rel. Satterlee* v. *Board of Police*, 75 N. Y. 38, 41, 42; *People ex rel. Ryan* v. *French*, 91 N. Y. 265, 270.) If the statute did not fix the salary of patrolmen, but merely named the maximum limit at which it might be fixed by the police board, still it conferred no power on the board to designate different salaries for different members of the same rank or grade of the regular force while performing regular duty as patrolmen. (*People ex rel. Ryan* v.

*French* 91 N. Y. 265, 277, 279, 280; *O'Leary* v. *Board of Education*, 93 N. Y. 1.) The fact that the relator has continued to perform his regular duties and has received the reduced sum as fixed by the resolution, under protest, is not a waiver of his rights. (*People ex rel. Satterlee* v. *Board of Police*, 75 N. Y. 38; *Keyn* v. *State*, 93 N. Y. 291.) *Mandamus* is the appropriate method for securing relief — obtaining payment. (*People ex rel. Satterlee* v. *Board of Police*, 75 N. Y. 38; *Swift* v. *Mayor*, etc., 83 N. Y. 535, 536.)

*D. Cady Herrick* for respondent. The police commissioners have the right to fix the salaries of patrolmen not exceeding $900 per year. (Sec. 38, chap. 77, Laws of 1870.) The relator's appointment on the police force was not a contract. It did not give him a right to have the same salary unchanged and unaltered forever. He acquired no property right by his appointment. (*Nichols* v. *McLean*, 101 N. Y. 533; *Smith* v. *Mayor*, etc., 37 N. Y. 520; *Connor* v. *Mayor*, etc., 5 N. Y. 285; *Same Case*, 2 Sandf. 355; *Fitzsimmons* v. *Brooklyn*, 102 N. Y. 538.) The reduction of the salary is not in conflict with that portion of the statute which prohibits a removal except upon charges. (*Riley* v. *Mayor*, etc., 96 N. Y. 336; *Connor* v. *Mayor*, etc., 2 Sandf. 369.)

Peckham, J. The relator shows that since June 1, 1874, he has held the office of patrolman in the police force of Albany, and has always faithfully performed the duties of that office, and that he received a salary of $900 since the time of his appointment, up to February 1, 1887, when it was reduced to $600 pursuant to a resolution of the board of police commissioners, which reads in this manner:

"*Resolved*, That the following be and the same is hereby adopted as a rule of the board:

"*First.* Upon the 1st day of February, 1887, there shall be established for special day or night duty, a police grade to be known as the veteran grade.

"*Second.* After ten years of police service, by a vote of a majority of the board, any patrolman now on the force or who

478        People ex rel. Waldorf *v.* Police Com'rs.        [Feb.,

Opinion of the Court, per Peckham, J.

may hereafter be appointed, may be assigned to duty in the veteran grade and shall receive a salary of $600 per year.

" *Third.* The chief of police shall from time to time assign members of the veteran grade to such special day or night posts of duty as he may designate."

Under the power conferred upon the commissioners by the above resolution, they, on the 1st of February, 1887, placed the relator and some twelve other patrolmen in the veteran grade they established, and reduced the salary of each from $900 to $600 per annum. The relator also shows that since he was placed in the veteran grade, and up to the 5th of April, 1887, he performed the same duties as when he was an ordinary patrolman, and that since then the duties he has performed are just as arduous as before. The defendants do not deny these allegations of the relator, but rest their right to do what they have done upon the statutes relating to the police force of Albany. In those statutes it is, among other things, enacted that the police force shall consist of a chief of police, with so many captains of police, sergeants of police and patrolmen as may thereafter be specially allowed and provided for, and all members of the force are to be appointed by the board of police. (Sec. 9, tit. 12, chap. 77, of Laws of 1870, at p. 200; amended by chap. 495, Laws of 1873, p. 758.) By chapter 298 of the Laws of 1885, page 509, the number of patrolmen is fixed at 115. The powers and duties connected with and incident to the police government of the city are vested in the police commissioners (sec. 2 of tit. 12, act of 1870, *supra*); and by section 20 of the same act the commissioners, in furtherance of the police government of the city, and for promoting and perfecting the police discipline of the members of the force, are empowered to enact by-laws, ordinances, rules and regulations of general descriptions, wherein, in addition to such other provisions as they may deem expedient, they shall particularly define, enumerate and distribute the powers and duties of the chief of police and captains of the police force, of the clerks of the board and of all the members of said police force; and the modes of appointment

to and removal from office of all the members of the force are to be therein specified, and the manner of discipline of said police, provided they are not in conflict with any of the provisions of the act, etc. By chapter 443 of the Laws of 1886, amending section 38 of title 12 of chapter 77 of the Laws of 1870, it is, among other things, provided that " each patrolman of the police force shall receive an annual salary of not over $900."

No member can be removed from his office until after written charges shall have been preferred against him and he shall have been publicly heard and examined by the board after notice to him in the manner prescribed by the rules and regulations. (§ 9 of act of 1877, *supra.*)

The defendants herein claim that under the law they have power to fix the salaries of patrolmen, while the counsel for the relator argues that the statute fixes the salary. Although the law does not in so many words provide for the fixing of the salary of patrolmen by the police commissioners, yet we may assume, from the reading of the whole act, that such power was meant to be given to that board. The authority is not conferred elsewhere and we think the legislature itself intended to do no more than to fix a maximum sum within the limits of which the salary of patrolmen was to be fixed by the board of police commissioners. It appears that the board did, a number of years since, fix the salary of a patrolman at the sum of $900, which sum was paid each patrolman up to the time of the adoption of the resolution above set forth, since which time the defendants have ordered paid those patrolmen whom they placed in the veteran grade $600 instead of $900 annually, while those who have been on the force two years or upwards receive the old sum. They base the legality of their action upon their power to establish rules and regulations for the government of the force not inconsistent with the law creating and establishing the same, and upon their right to fix the salary of patrolmen.

480    PEOPLE ex rel. WALDORF *v.* POLICE COM'RS.    [Feb.,

Opinion of the Court, per PECKHAM, J.

We are all of opinion that the action of the defendants in this instance is not a valid exercise of those powers. It must be borne in mind that the statute provides as to what the force shall consist of, viz : A chief of police, not to exceed seven captains of police, twelve sergeants and 115 patrolmen, five station house keepers, supernumerary patrolmen not to exceed ten, one surgeon and not more than one clerk. (Chap. 298 of Laws of 1885.) There is no provision for a separation of patrolmen into two or more distinct grades, with different salaries attached to each grade, but here is a general provision for a distinct class of officers known as patrolmen, and the board has the right to fix the salary of such class. It seems to us that the authority as to patrolmen which is granted to the board by the statute is one by which the board can define or enumerate generally the powers and duties of the patrolmen as a class, and adopt rules and regulations as to their discipline, but that under an assumed exercise of such powers the board cannot in effect establish a separate and distinct grade of patrolmen not recognized by the statute and formed only by the vote of a majority of the board, and attach a lower salary to such office than is given to a patrolman who is not placed in such separate grade.

We do not mean to question the power of the board to adopt such rules and regulations defining the duties of the members of the force, or providing for their discipline as in the judgment of the board shall be deemed proper; nor the right to detail any patrolman or set of patrolmen to any special or general work or duty coming within the fair range of police duty. This right is essential, and is fully given by the above statute. But the right to discriminate as to the amount of the salary to be given to the patrolmen as between themselves, we do not think is granted by the statute, even though the board should first establish this veteran grade into which a patrolman may be put against his will and in spite of his remonstrance.

By this resolution any patrolman, after ten years service, in good health, perfectly capable of discharging the duties of the office, whose behavior has been excellent, and against

whom no charges are made, may yet, by a majority vote of the board, be placed in the veteran grade, and his salary reduced one-third, and then assigned (as relator says he was) to precisely the same duties he discharged before he was placed in such grade. We think this cannot be justly said to be the exercise either of the power to regulate and define the duties of patrolmen, or of the simple power to fix their salaries. If so, I do not see why the defendants would not have power to fix a different sum for each patrolman as in their judgment they should think proper, not exceeding the maximum sum, without going through the form of establishing a separate grade, into which they could place any patrolman against his will. It seems to me it is the discrimination which is unlawful, and it is not made any the less so by the establishment of a grade, the duties whereof may be precisely the same as the regular patrolman.

That such a power would be in the present case in good hands, and that no arbitrary or improper action on the part of the board would result from its exercise may be fully conceded. It is a question simply whether under the statutes the power has in fact been granted, and upon a careful examination we are compelled to say we think it has not.

If the power generally to fix salaries were held to include this right of discrimination, then under that power the board could so reduce the salary in one or more cases as to make it merely nominal in amount, and require of such men the performance of precisely the same duties as other patrolmen while leaving the salary in other cases at the maximum sum of $900. In this way the provision of the law that the members of the force shall hold their offices during good behavior could be easily nullified. We do not dispute the right of the board in its own proper judgment to reduce the salaries of all patrolmen. We assume their power and control (exercised in good faith and not as a pretext or color) over the question of salary as to all of them up to the maximum sum, and it may be that a resolution fixing the salary of newly appointed

patrolmen at a less sum than others who have been on the force would be valid. Or perhaps the acceptance of such appointment by the appointee, with the salary attached, would be construed as a consent which might be binding on him. That question is not now before us.

This case is wholly unlike that of *Riley* v. *Mayor*, etc. (96 N. Y. 331). The plaintiff in that case was simply an employe of the fire department of New York, and the board of fire commissioners was authorized as such to determine at will the compensation and duties of all persons employed therein. The court, per RUGER, Ch. J., said : " The duties to be performed by every employe of the department are by the statute left entirely to the discretion of the fire commissioners, and it would be no reason for a refusal by such employe to perform an order of the fire commissioners requiring him to work in the repair shops to say that such an employment was not the customary service of an assistant engineer." If the statute had provided for a distinct office of assistant engineer to which the person was to be appointed and was to hold such office during good behavior, a resolution of the board placing him in another and totally different position and giving him a reduced compensation for his services while there would have raised a different question. It was as an employe of the board that he was appointed, with the full right on the part of the board to fix his particular duties and the amount of the compensation therefor. It was held that the board should be regarded under such circumstances as the exclusive judges of the propriety of the employment of the servants of the department.

In this case the relator holds an office, that of patrolman in the police force, and the statute limits the number thereof, and while it gives to the board the right to fix the salary to be paid such officers within a maximum sum, it does not, as we think, give it power to make a discrimination in the amount of such salary as between these officers after their appointment and against the r protest.

These views lead to a reversal of the orders of the General
and Special Terms, and to the granting of relator's motion for
a *mandamus;* but as there is not the slightest reason to doubt
the entire good faith of the defendants, who are public officers,
and without any private interest in the matter litigated, no
costs against them should be allowed.

All concur.

Ordered accordingly.