NEWMAN *v.* STUCKEY *et al.*

*(Supreme Court, General Term, Fourth Department. July 1, 1890.)*

1. NEGLIGENCE—JOINT LIABILITY.

Where two persons together owned a stallion, and had agreed to divide his earnings between them, and to use him in serving plaintiff's mare, both were liable for the negligence of one in so doing, whereby the mare was injured.

**2.** COMPROMISE—EFFECT.
    Where two persons were jointly liable for an injury caused by the negligence of one in carrying out a joint enterprise, an agreement entered into with one of them whereby his note was accepted, together with a promise to deliver certain property, as full settlement of the claim, operated to discharge the other.

**3.** SAME—RESCISSION.
    Where an agreement of settlement of the claim sued on had been made, and in pursuance thereof, among other things, defendant had given his note to plaintiff, it was error, on a question whether the agreement was rescinded at a certain time, to refuse a charge that the fact that plaintiff did not then return the note was to be taken into consideration in determining the question.

Appeal from Onondaga county court.

Action for damages by William W. Newman against George Stuckey and William Stuckey. Verdict for plaintiff for $95, and motion on judge's minutes for new trial denied, from which, and from the judgment entered on the verdict, defendants appeal.

Argued before HARDIN, P. J., and MARTIN and MERWIN, JJ.

*Lyman & James,* for appellants.    *Baldwin & Kennedy,* for respondent.

HARDIN, P. J.   It appears by the evidence that the stallion was owned by both of the defendants.   George Stuckey testified, viz.: "I and my son owned this horse together over a year;" "kept the horse for my own use, and for others that wanted to use it; and had been so during all the time that I and my son owned it."   "He took care of the horse, and had one-half of the horse's earnings, and I had the other half.   That arrangement was made when we bought the horse in the spring of 1888, in April, and continued down to the time of the death of the mare."   It is not important to inquire or to determine whether there was a partnership between the defendants.   Each was part owner of the stallion, and they had entered into a contract to divide the earnings of the horse, and they had together agreed with the plaintiff to use the horse in serving the mare of the plaintiff.   If, by the negligence of one in the carrying out of the undertaking made by both, injuries resulted to the plaintiff's animal by reason of a breach in the undertaking to use reasonable care, both were liable.   They had entered into a contract between themselves as to the manner in which the business in which they were engaged with their stallion should be conducted.   The case of *Stroher* v. *Elting,* 97 N. Y. 105, is in point.   In that case, DANFORTH, J., says: "They undertook to engage together in a money-making occupation, to which one contributed as capital the horses, harness, and wagon, and food and care of the team, and the other his personal services.   The reward of each was to be derived from the avails of the business as such, and not by way of compensation either for services or use of property.   As to third persons, therefore, within rules too well settled to permit discussion, each became the agent of the other in the prosecution of the common enterprise, and liable for his omissions or faults in regard thereto.   *Champion* v. *Bostwick,* 18 Wend. 175; *Leggett* v. *Hyde,* 58 N. Y. 272; *Roberts* v. *Johnson,* Id. 613."   That case was followed in *McCarragher* v. *Gaskill,* 42 Hun, 451.   The complaint of the plaintiff seems to be founded on the alleged agreement of the defendants.   It is averred that the "defendants * * * agreed to exercise due care;" also that the "defendants undertook on said day and at said place."   Following these allegations is an averment of negligence on the part of Will Stuckey.   There is no averment in the complaint of any negligence of the other defendant.   The injuries complained of to the plaintiff's mare are alleged to have occurred on the 26th day of June, 1889.   From the evidence it appears that the defendant William Stuckey had a negotiation with the plaintiff on the 3d day of July, 1889, and in that negotiation a compromise and adjustment of the alleged liability, by reason of the occurrence of the injuries complained of, took place, and in pursuance of that arrangement or agreement entered into between William Stuckey and the plaintiff, and as a part thereof, the defendant William Stuckey

made and executed and delivered his promissory note to the plaintiff in the following figures and words:

"$100.                                    SOUTH ONONDAGA, July 3, 1889.

"One year from date, for value received, I promise to pay to W. W. Newman, or bearer, one hundred dollars, and interest.          WILL STUCKEY."

In addition to the delivery of the note of $100 by the defendant William Stuckey, he agreed to make up to the plaintiff the sum of $50 more by delivering to him the "Hotchkin colt," which was to be kept until it was four months old, which was to be taken by the plaintiff at the sum of $25; and the defendant surrendered a claim of $18 for past services rendered on the 1st of May, and agreed to deliver other services to the extent of $7, thus making up, with the note and these three items, the sum of $150. The plaintiff received the note, and agreed upon the terms already stated as a settlement and compromise of the claim which he had made for the injuries occurring to his mare. While that adjustment and settlement remained, plaintiff held the note given thereunder payable to himself or bearer, having a year's time to run. Any remedy he might otherwise have had for the injuries occuring, was suspended and postponed. Such agreement operated to discharge the other joint contractor from the liability alleged. *Waydell* v. *Luer*, 3 Denio, 410; *Millerd* v. *Thorn*, 56 N. Y. 402. It was said in *Luddington* v. *Bell*, 77 N. Y. 141, viz.: "When, therefore, a creditor agrees to release a joint indebtedness by the acceptance of the note or any other obligation of one of his debtors in payment, he receives a consideration which may be more valuable to himself than the original claim. Whether it is in fact so is wholly immaterial. The slightest consideration is sufficient to support the most onerous obligation. *Oakley* v. *Boorman*, 21 Wend. 588. Indeed the additional obligation assumed by one of its debtors by becoming responsible severally for the entire debt would of itself render it a valid agreement." This case has recently been approved and followed in *Allison* v. *Abendroth*, 108 N. Y. 472, 15 N. E. Rep. 606; and, in referring to *Luddington* v. *Bell*, supra, ANDREWS, J., says: "It is held that the acceptance of a creditor of the individual note of one of the members of a copartnership after dissolution for a portion of the copartnership debt was a good consideration for the creditor's agreement to discharge the maker from further liability." To avoid the force of the settlement and adjustment it was claimed upon the trial by the counsel for the plaintiff that there had been a rescission of the contract of settlement prior to the commencement of this action. The evidence offered for the purpose of establishing the rescission, or waiver, more properly speaking, of the agreement, is very slight and unsatisfactory. When stated by the plaintiff, it is to the effect that he held an interview with William Stuckey in which he said that he had learned that his father, George Stuckey, refused to consent to the delivery of the Hotchkin colt upon the agreement; and, according to the testimony of the plaintiff, he then said to William, viz.: "Then, as you cannot carry out the agreement as you made it, doesn't that put the matter just as it was before we made the agreement?" He answered: "Yes; I suppose so." In his cross-examination upon that subject, he states as follows: "'Well,' I says, 'you cannot carry out the agreement that we made. Does not that place the matter as it was before we made the agreement?' He said, 'Yes; I suppose so.'" Plaintiff's witness Leamy narrates the interview on that subject in the following words: "Then Mr. Newman says: 'If you won't give me the service of the mare or the Hotchkin colt that leaves the matter just as it was before we commenced.' 'Yes,' says Mr. Stuckey; and me and Mr. Newman started for the house." It is to be borne in mind that the plaintiff did not then and there return the promissory note which he held executed by William Stuckey. He did not by word or act expressly inform Stuckey that he would recede from the agreement that had been made between the parties. It is very doubtful whether William Stuckey understood on that occasion that

the inquiry addressed to him called for any response in respect to whether the settlement should be given up or not. It is more probable that he understood that, so far as his liability was concerned, it rested in the terms of the agreement which he had made with the plaintiff. Surely that would be a reasonable version as long as the plaintiff continued to hold the promissory note which he had taken from William Stuckey. However, we fail to find in the evidence anything to indicate that George Stuckey ever waived the agreement or settlement which had been made, the effect of which we have already seen was to discharge him from liability. It was the duty of the plaintiff, if he would make a valid rescission, to restore that he had received in virtue of agreement. As was said in *Francis* v. *Railroad Co.*, 108 N. Y. 97, 15 N. E. Rep. 192: "The plaintiff cannot rescind if he retains in himself, or withholds through another, any fruit of the contract. * * * He who would rescind must rescind wholly, and leave no right flowing from him outstanding which imperils the completeness of the rescission." See, also, *Gould* v. *Bank*, 86 N. Y. 75; *Allison* v. *Abendroth*, 108 N. Y. 475, 15 N. E. Rep. 606.

The trial court was asked to charge "that if this matter was adjusted and settled between William Stuckey and plaintiff that it ended the cause of action for negligence as against these defendants." The court declined to thus charge, and there was an exception. Nor do we think the refusal was cured by the qualification which was given in the following words: "If there was a settlement, an executed agreement to settle, then it ended the matter; but on the evidence it was an executory agreement, and therefore didn't settle if they afterwards chose to rescind." As already observed, there was no direct evidence that George Stuckey had at any time consented to rescind or waive the agreement; nor is there any evidence of any authority of William to waive the settlement. We think the trial court ought to have yielded to the request made to charge the jury "that the fact that the plaintiff did not deliver the note in question to the defendant William Stuckey on the 17th or 27th of July, whichever date it may be that they had the conversation, that that is a fact which may be taken into consideration by the jury in arriving at the question whether or not there was a rescission of the contract." We think the fact embraced in the request was very important, and that it was a fact which the jury might very properly be instructed to consider in determining whether or no the plaintiff and defendant William Stuckey mutually agreed to waive the settlement theretofore made. After the settlement was made, if the defendant William Stuckey failed to deliver the Hotchkin colt, or to render the services stipulated for in the agreement, doubtless he would have been liable in an action to the plaintiff thereon for a breach of that part of the agreement which related to those two items. However, the complaint in that case does not count upon the agreement, and therefore the plaintiff is not in a situation to recover for any alleged breaches of the agreement on the part of the defendant William Stuckey. These views lead to a new trial. Judgment and order reversed on the exceptions, and a new trial ordered in the county court of Onondaga county, with costs to abide the event. All concur.