THE PEOPLE ex rel. JOHN M. FRANCIS et al., Respondents, v. THE COMMON COUNCIL OF THE CITY OF TROY, Appellant.

As to whether a statutory provision, directing a municipal corporation to employ a designated class of labor in order that the service may be well performed, vests in the persons answering the designation a legal right to be employed, and gives them a standing to compel the municipal body by mandamus to employ them, *quære*.

Where the duty of selecting the persons to be employed is imposed by law upon the municipal body, and the question whether they possess the requisite qualifications is one of fact to be determined by it, no particular mode of determination being provided by law, and said body has exercised the power and made the selections, its action cannot be reviewed by mandamus ; nor can it be compelled by that proceeding to appoint particular persons on their allegation that they in fact, and not the persons actually selected, possess the prescribed qualifications.

A writ of mandamus may be addressed to subordinate judicial tribunals to compel them to exercise their functions, but not to require them to decide in a particular way.

This principle applies in every case where the duty, performance of which is sought to be compelled, is in its nature judicial, or involves the exercise of judicial power, irrespective of the character of the officer or body to which the writ is addressed.

Where a subordinate body is vested with power to determine a question of fact, the duty is judicial, and it cannot be compelled by mandamus to decide in a particular way, however clearly it be made to appear what the decision ought to be.

Under the provision in the charter of the city of Troy (§ 3, tit. 2, chap. 813, Laws of 1873), requiring the common council " to designate not to exceed four newspapers having the largest circulation in the city, in which the city advertizing shall be done," the power to determine as matter of fact

which papers have the largest circulation is vested in the common council; the court cannot determine it in the first instance, and cannot direct by mandamus the designation of any particular paper or papers. Under said provision the common council designated four papers, the proprietors of which acted under such appointment. The proprietors of another newspaper sought to compel, by mandamus, the designation of their paper, upon affidavits showing that said paper had a larger circulation than one or more, if not all, of the designated papers. The proprietors of these papers were not made parties. *Held* that, aside from the legal questions, the writ should be denied, as the appointment of the papers designated would not be vacated by any judgment herein, and if compelled to designate the relators' paper there would be five official papers instead of four, as limited by the charter; also that a mandamus requiring the common council to meet and designate not exceeding four papers having the largest circulation, could not be granted, as the year had elapsed for which the designation should have been made.

*People ex rel.* v. *Common Council* (17 Hun, 20), reversed.

(Argued May 27, 1879; decided September 16, 1879.)

APPEAL from order of the General Term of the Supreme Court, in the third judicial department, affirming an order of Special Term directing the issuing of a peremptory writ of mandamus directed to the common council of the city of Troy, requiring them to designate The Troy Daily Times, a newspaper of which the relators are the proprietors, as an official paper of the city of Troy. (Reported below, 17 Hun, 20.)

The facts appear sufficiently in the opinion.

*R. A. Parmenter*, for appellant. The court below had no power to direct the common council to designate any certain paper named in the writ. (*People* v. *Judges*, 20 Wend., 660; *People* v. *Brennan*, 39 Barb., 651.) No proper case for a peremptory mandamus was presented on behalf of the relator. (*People* v. *Hoyt*, 66 N. Y., 606; *In re Gardner*, 68 id., 467.)

*Esek Cowen*, for respondents. Parties contracting with municipal corporations are bound to take notice of the limitations imposed upon them by law, and any contract contrary to such limitations is void. (*Donovan* v. *N. Y.*, 33 N. Y., 293.)

Rapallo, J. By section 3 of title 2 of the charter of the city of Troy (Laws 1873, chap. 813, p. 1216), the common council is required to "designate not to exceed four newspapers having the largest circulation in the city, in which the city advertising shall be done, only on the order of the common council." No mode of ascertaining which papers have the largest circulation is pointed out by the statute, and consequently that question is left open as one of fact, to be determined by the common council.

That body, at a regular meeting held on the 12th of March, 1878, designated, as official newspapers for the then ensuing year, four newspapers published in the city, viz., the Troy Daily Press, the Troy Morning Whig, the Trojan Observer, and the Troy Evening Standard. The proceedings of the meeting at which this designation was made are set forth in the moving papers on this application, but they do not disclose what evidence the common council then had before it of the extent of the circulation of the various newspapers, except that, after the designation of papers had been made, an affidavit of one of the relators was presented, stating that he was one of the proprietors of the Troy Daily Times, which paper had the largest circulation of any daily newspaper published in said city; that deponent believed it had the largest circulation of any newspaper published in said city, but was positive that it was one of the four newspapers published in said city having the largest circulation in said city. With this affidavit a written communication from the relators was presented to the common council, calling attention to the before cited provision of the charter, and asking as matter of right that the Troy Daily Times be designated as one of the official papers of the city.

A motion to reconsider the designation was made after the presentation of these papers, but failed, and the relators thereupon applied to the Supreme Court for a peremptory mandamus, requiring the common council to designate their's as one of the official newspapers. This application was based upon the minutes of the proceedings before set forth,

and upon the minutes of the proceedings of the common council of the preceding year which showed that, at a meeting held on the 5th of April, 1877, a report of a committee on printing was received, setting forth the circulation in January, February and March, 1877, of various papers in the city of Troy. As this report related to the year 1877 it cannot be regarded as controlling the action of the common council of 1878. The application was further supported by an affidavit of the proprietor of the Trojan Observer, that he did not know what the circulation of that paper was for the two months prior to March 13, 1878; that it was issued once a week; that he did not know that its circulation was to exceed 2,000 copies. An affidavit of the manager of the Evening Standard, a daily paper, that its circulation was between 2,100 and 2,500 copies per day, on and before March 12, 1878. An affidavit of a clerk of the proprietor of the Troy Morning Whig, that the average circulation of that paper for the three months prior to the 12th March, 1878, did not exceed 2,000 copies. An affidavit of the proprietor of the Troy Daily Press, that its average daily circulation during the three months next preceding March 13, 1878, was at least and more than 1,800 copies; and an affidavit of one of the relators, that their paper, the Troy Daily Times, had on the 12th of March, 1878, and for more than three months previous thereto, an average daily circulation in said city of upwards of 3,000, and that its total daily circulation exceeded 6,000, and that, as he was informed and believed, the four newspapers designated by the common council were not the four having the largest circulation in said city. An affidavit of the clerk of the common council, that, at the meeting at which the designation was made, no evidence was before the common council as to the circulation in said city of any of the newspapers published and circulated therein, except the before mentioned affidavit presented on behalf of the Troy Daily Times, and that the common council refused to refer it to the city attorney to ascertain which were the four papers having the largest

circulation, and no committee was appointed to ascertain that fact. An affidavit of one of the proprietors of a weekly newspaper ·called the Troy Northern Budget was also read, stating that, at and prior to the 12th of March, 1878, it had an average circulation in said city at each issue of 6,000 and upwards, and was one of the four newspapers published in said city having the largest circulation therein ; and that, as he believed, the four newspapers designated were not the four having the largest circulation in said city.

In opposition to the application affidavits were read as follows : An affidavit of the president of the common council setting forth the political character of the newspapers published in the city. That the Troy Northern Budget was published only on Sunday, and that the papers designated on the 12th of March, 1878, had accepted the appointment and published the city advertising ever since. A further affidavit of R. A. Parmenter, Esq., was read, descriptive of the various newspapers·published in the city, from which it appears that the Troy Daily Times was· an afternoon paper issued in two editions, at half-past two and half-past four o'clock each week day, and the Troy Northern Budget was issued every Sunday morning. That the four papers designated by the common council on the 12th March, 1878, each claimed to be an official paper, and the city advertising had since that time been published in those papers.

On this evidence the court at Special Term awarded a peremptory mandamus, commanding the common council at its next regular meeting to designate the Troy Daily Times as one of the official papers of the city of Troy.

Under the charter it was the duty of the common council to designate, not to exceed, four newspapers. It was, therefore, discretionary with it whether to designate more than one. The Troy Daily Times claims the legal right to be designated, alleging that it was the duty of the common council to designate the paper or papers having the largest circulation in the city, and that it answers that description, its daily circulation in the city being upwards of 3,000, while that

of neither of the papers designated reaches that figure, that of the Evening Standard being placed in the affidavits at 2,100 to 2,500, the Morning Whig at 2,000, the Daily Press at 1,800 and upwards, and as to the Observer, a Sunday paper, its proprietor stating that he could not state what its circulation in the city was and did not know that it exceeded 2,000. The Northern Budget another Sunday paper, not designated, claimed a circulation at each issue of 6,000. In answer to this evidence it appeared that the Troy Daily Times issued two afternoon editions, and it was not claimed that it circulated 3,000 copies of each edition, and the presumption is that the 3,000 copies claimed to be circulated in the city, were the aggregate of the two editions.

Assuming, however, that the evidence is sufficient to establish that the Troy Daily Times had the largest circulation in the city, and that the common council erred, or violated its duty in not designating it as one of the official papers, the case presents questions of importance, and of no small difficulty. The first is whether the legislative direction to the common council to designate the papers having the largest circulation vests in those papers a legal right to be employed, which can be enforced by mandamus at their instance, or whether it is a provision intended for the benefit, not of the newspapers, but of the public, to secure the most extensive and efficient advertising, and for a willful violation of which duty the common council are answerable to the public by indictment or otherwise and not to the newspapers. For an injury inflicted upon an individual, by neglect or violation of a public duty, the officer may be responsible both to the public and to the individual injured, and in case of the neglect of a duty enjoined by law for the protection of the persons or property of individuals, its performance may in general be compelled by mandamus at the instance of any person interested. But there is great room for doubt whether a statutory provision directing a municipal corporation to employ a designated class of labor, in order that the service may be well performed, vests in the persons answer-

1879.] People ex rel. Francis et al. v. Common Council. 39

,Opinion of the Court, per Rapallo, J.

ing the designation, a legal right to be employed, and gives them a standing in court, to compel the municipal body to employ them. But passing that, the further question remains, whether when the duty of selecting the persons to be employed is imposed by law upon the public body, and the question whether they possess the necessary qualifications is one of fact, to be determined by it, no particular mode of determining the fact being provided by law, and the public body has exercised this power, and made the selection, its action can be reviewed by mandamus, and it can be compelled by that proceeding to appoint particular persons, on their allegation that, in fact, they and not the persons actually selected, possess the prescribed qualifications.

The office of the writ of mandamus is in general to compel the performance of mere ministerial acts prescribed by law. It may also be addressed to subordinate judicial tribunals, to compel them to exercise their functions, but never to require them to decide in a particular manner. It is not, like a writ of error or appeal, a remedy for erroneous decisions. (*Judges of Oneida Common Pleas* v. *People*, 18 Wend., 92–99, and cases cited.) This principle applies to every case where the duty, performance of which is sought to be compelled, is in its nature judicial, or involves the exercise of judicial power or discretion, irrespective of the general character of the officer or body to which the writ is addressed. A subordinate body can be directed to act, but not how to act, in a matter as to which it has the right to exercise its judgment. The character of the duty, and not that of the body or officer, determines how far performance of the duty may be enforced by mandamus. Where a subordinate body is vested with power to determine a question of fact, the duty is judicial, and though it can be compelled by mandamus to determine the fact, it cannot be directed to decide in a particular way, however clearly it be made to appear what the decision ought to be. This principle was applied to an assessor in *Howland* v. *Eldredge* (43 N. Y., 457, 461), and is there recognized as an established and universal rule.

The duty of selecting the newspapers having the largest circulation in the city, being imposed upon the common council, the power to determine as matter of fact which papers have the largest circulation is necessarily vested in that body.

The most that can be done by mandamus is to compel the common council to determine the question and designate the papers with reference to the statutory requirement; but I apprehend that it was not the province of the court to determine the question of fact in the first instance, and direct what particular paper or papers should be designated. This view was taken by the General Term in the first department in the case of *People* v. *Brennan* (39 Barb., 651). The mayor and comptroller of the city of New York were empowered by law to designate four papers having the largest daily circulation. The mayor and comptroller differed as to the papers to be designated, the comptroller insisting that the papers should be those having the largest daily circulation within the city, and the mayor contending that the largest circulation generally, was intended. On proofs showing which papers had the largest general daily circulation, a peremptory mandamus was, on the relation of the mayor, granted at Special Term requiring the comptroller to unite with the relator in designating four papers named in the writ. The General Term agreed in the construction put upon the statute by the mayor, but said that as the determination which four papers had the largest daily circulation, involved an adjudication upon the question of fact, they did not see upon what principle a mandamus could issue commanding the comptroller to unite in the designation of certain papers named in the writ. That the court could by mandamus compel the mayor and comptroller to meet and act in the matter, but not to act in a particular manner. The order was accordingly modified so as to direct the issuing of a mandamus requiring the comptroller to unite with the mayor in designating the four papers having the largest daily circulation generally. In the present case the evidence seems to have been quite satisfactory to the court

1879.] PEOPLE ex rel. FRANCIS et al. *v.* COMMON COUNCIL. 41

Opinion of the Court, per RAPALLO, J.

that the relator's paper should be one of those designated, but if it was within the power of the court in this case to order the common council how to decide, or to designate any particular paper, it would be equally in its power to do so in cases involving nicely balanced and difficult questions; and the duty of designating official papers for every city in the State could be transferred from the officers charged by law with that duty, to the courts of justice.

If the common council have willfully violated or disregarded a duty enjoined upon them by law, they should be responsible in some form. But aside from the legal questions which have been considered, there are serious practical difficulties in the way of applying the particular remedy given by the order appealed from. The four papers designated have acted under their appointment. They are not parties to this proceeding, and their appointment would not be vacated by any judgment which could be rendered herein. There would in that case be five official papers when the law authorizes only four. It would be difficult to say that the claims of the papers appointed by the common council, for services rendered could be successfully resisted by the city on the ground of any invalidity in their appointment. The effect of the mandamus would be to compel the appointment of a fifth paper without disturbing that of the other four. A very clear case should be made out to induce the court to subject the city to this additional expense, and we do not find the right of the relators to a mandamus so plain as to justify that course. We think that the view of the General Term in the first department is the correct one, and that the most that should be done in such a case by mandamus would be on a proper application, and satisfactory proof that the statutory direction had been disregarded, to command the common council to meet and designate not exceeding four papers having the largest circulation in the city of Troy. But a mandamus in that form would not be appropriate now, as the year has elapsed for which the designation should have been made.

The orders of the General and Special Terms should be reversed and the application denied, without costs.

All concur.

Orders reversed.