PEOPLE *ex rel.* STEPHENS *v.* BARDIN.

*(Supreme Court, Special Term, Tompkins County.* June, 1889.)

OFFICE AND OFFICER—APPOINTMENT—UNION SOLDIERS.

Under Laws N. Y. 1887, c. 464, providing that honorably discharged Union soldiers shall be preferred in municipal appointments, where it appears that though an applicant possessed all the qualifications entitling him to preference required by the statute, and was fully competent to discharge the duties of the office applied for, the mayor refused to appoint him, *mandamus* for the appointment will issue to the mayor, who has no discretion in the matter.

Application by Henry W. Stephens for *mandamus* to John Bardin, mayor of the city of Ithaca.

*Bradford Almy*, for relator.   *D. F. Van Vleet*, for respondent.

FORBES, J.   The relator is an honorably discharged Union soldier, having served in the One Hundred and Thirty-Seventh Regiment, New York State Volunteers, in the United States army, in the war between the states known as the "Rebellion." He is also a member of the G. A. R. in good standing, residing in the city of Ithaca, N. Y.   The defendant, John Bardin, is the mayor of said city, having been duly elected and having qualified as such mayor, and thereafter having entered upon the discharge of the duties of his office, under a municipal election held in said city March 6, 1889.   The office of collector of taxes was made a city office by the charter.   Under the city charter, the defendant, as such mayor, has the sole power of appointment to the office of collector of taxes in and for said city.   City Charter, tit. 2, § 1, p. 8. "The compensation of the collector of taxes is not to be greater than that allowed to collectors of towns for similar services."   Charter, last clause, § 10, pp. 8, 9, tit. 4.   The relator made an application to the defendant, as mayor, for an appointment to the office of collector of taxes in and for said city.   The mayor knew that the relator had been a Union soldier in the Rebellion, and defendant was also informed that the relator was, at the time the application was made, an honorably discharged Union soldier of the Rebellion; and that he was fully qualified and competent to perform the duties of the said office, acceptably to said city.   These facts were fully known to the defendant, at the time of such application, made to the mayor, for said appointment.   The relator was the only honorably discharged Union soldier who applied, and his appointment was urged unanimously, and recommended by the Sydney post of the G. A. R., located in Ithaca.   There were other applicants, none of whom were discharged Union soldiers or sailors.   The mayor refused to appoint the relator, but did appoint another applicant.   An application is now made to compel the mayor to appoint the relator to said office. This appointment involves the removal of the present incumbent, perhaps, as well as the appointment of the relator.

All officers appointed by the mayor continue in office during the mayor's term, unless sooner suspended or removed by the mayor, and until their successor shall have been appointed and qualified.   Charter, tit. 4, §§ 13, 14.   It

became the duty of the said mayor, under the provision of this charter, (title 4, § 1,) "to take care that the laws of the state should be faithfully executed within said city. This duty devolved upon him as the chief magistrate of said city." Has the defendant performed that duty with respect to the relator? The act of May 19, 1884, as amended by chapter 464 of the Laws of 1887, made it the duty of the mayor to appoint an honorably discharged Union soldier or sailor, if one applied, giving him preference over other applicants; and the defendant is charged with a faithful compliance with that law, both in letter and spirit. The act reads as follows: "Section 1. In every public department.and upon all public works of the state of New York, and of the cities, towns, and villages thereof, and also in non-competitive examinations under the civil service laws, rules, and regulations of the same, wherever they apply, honorably discharged Union soldiers and sailors shall be preferred for appointment and employment. Age, loss of limb, or other physical impairment, which does not, in fact, incapacitate, shall not be deemed to disqualify them, provided they possess the business capacity necessary to discharge the duties of the position involved. Sec. 2. All officials or other persons having power of appointment to, or employment in, the public service, as set forth in the first section of this act, are charged with a faithful compliance with its terms, both in letter and spirit, and a failure therein shall be a misdemeanor. Sec. 3. This act shall take effect immediately." The mayor had no arbitrary right or power to disregard this law, especially enacted for his observance; in other words, he had no discretion to exercise, conceding the facts "that the relator was an honorably discharged Union soldier, residing in the city of Ithaca, and an elector in said city; was fully competent, and possessed the business capacity necessary to discharge the duties of the office involved; and that the mayor knew these facts at the time the application was made by the relator." He was then bound to prefer the relator to all others, and appoint him. The law must be construed in such a manner as to uphold it, and give effect to the intent and purpose of the enactment of the law. *In re Breslin,* 45 Hun, 210; *Bell* v. *Mayor,* 105 N. Y. 139, 11 N. E. Rep. 495; *Weiler* v. *Newbach,* 47 Hun, 166; *People* v. *Commissioners,* 108 N. Y. 475, 15 N. E. Rep. 692. Invest the mayor with a discretionary preferment, and the object of the act is completely nullified, thwarted, and stripped of its purpose. It is worse than a dead letter. It is a miscarriage of intended justice, meant to be enforced in letter and in spirit; not to be avoided by an arbitrary exercise of discretionary power in making appointments not within the law. This view is taken by the legislature in several acts relating to the same subject, subsequently passed, which may be read in harmony with this act. Chapter 410 of the Laws of 1884, § 2, charges the mayor with the duty of prescribing rules and regulations for the admission into the service of the city of certain persons; and by section 4 "honorably discharged Union soldiers and sailors are to be preferred above all other persons of equal standing." Laws 1884, pp. 488, 489. The act of 1883 was again amended by chapter 29, Laws 1886, still further extending the preference to soldiers and sailors "over all other persons, though graded lower than others so examined and reported," etc., and these acts are pronounced as "in grateful recognition of service rendered in the Rebellion." Laws 1886, § 1, p. 37. The further interpretation of that law is given by chapter 119 of the Laws of 1888, "forbidding the removal from office (unless appointed for a definite time) of any honorably discharged Union soldier or sailor, except for cause shown." Laws 1888, § 1, p. 162; *In re Dubois,* not reported, BARNARD, J. We think the whole tendency is towards compensation for meritorious service in the Rebellion, and the selection of this class of men for civil offices is but a just recognition of their courage and efficiency in that service in saving the general government from dismemberment; and they should now be preferred in sharing the emoluments, if they come within this law, which

was designed to recognize their services then performed. These acts have been pronounced constitutional, and the policy of preferment is upheld by the courts in this state. In *Re Wortman*, 2 N. Y. Supp. 324, DANIELS, J., says: "So far as the law extends, there seems to be no constitutional objection against their validity; and no officer or appointing power, as these words have been employed in the statute of 1886, has authority to deny this preference to the class of persons who are brought within the provisions of these statutes. And where the proceeding may be such as arbitrarily to deny the privilege secured by the statute, a *mandamus* would be the appropriate remedy to enforce the performance of the duty, (*People* v. *Leonard*, 74 N. Y. 443;) and authority for its allowance has been secured by sections 2068 and 2070 of the Code of Civil Procedure." *People* v. *Barnard*, 110 N. Y. 548, 18 N. E. Rep. 354; *People* v. *D'Oench*, 111 N. Y. 359, 18 N. E. Rep. 862. We think the power to grant the right is fully sustained in *People* v. *Board*, 107 N. Y. 235, 13 N. E. Rep. 920; *In re Hitchcock*, not reported, BARNARD, J.; *People* v. *French*, 4 N. Y. Supp. 330; *People* v. *Adams*, Id. 522; *People* v. *Knapp*, Id. 825. The motion for peremptory writ of *mandamus* is therefore granted, under the rules and practice of this court, compelling the defendant to appoint the relator to the office of collector of taxes in and for the city of Ithaca, with costs.