16   PEOPLE ex rel. LOCKWOOD v. SARATOGA SPRINGS.

THIRD DEPARTMENT, SEPTEMBER TERM, 1889.

---

THE PEOPLE OF THE STATE OF NEW YORK ex rel. OSCAR F. LOCKWOOD v. THE TRUSTEES OF THE VILLAGE OF SARATOGA SPRINGS.

*Honorably discharged Union soldier — his right, under chapter 464 of 1887, to a preference in the appointment to public office, considered.*

Upon a motion for a peremptory writ of *mandamus,* requiring the trustees of the village of Saratoga Springs to appoint the relator to the office of superintendent of public works of the village of Saratoga Springs, it appeared that at a meeting of the defendants on May 6, 1889, called to elect a superintendent, the relator appeared and made application for the appointment in writing, stating that he was an honorably discharged Union soldier and entitled to a preference in said appointment, by virtue of the provisions of chapter 464 of the Laws of 1887, and presented his certificate of discharge, but offered, before the trustees, no proof, except by affidavits, of his capacity for the position.

The trustees, in their answering affidavits, stated that the office of superintendent of public works of the village is one of very great importance; that it required very great ability and business capacity and experience; that they considered the application of the relator and his claim to the office, under the law of 1887, and the applications of other candidates, and that no proof was offered as to the fitness of either of the candidates for the office; that the majority of the trustees were well acquainted with the relator and with his qualifications for the appointment, and also with the qualifications of the other candidate; that they came to the conclusion that the relator was not competent for the position of superintendent of said village, and that one Ryall was, and that, therefore, in good faith, and not intending to violate the provisions of chapter 464 of 1887, they appointed Ryall to the office, who was duly qualified, and at the time of the answer was performing the duties of the office.

The act under which the relator claimed the office in question provides that "honorably discharged Union soldiers shall be preferred for appointment and employment."

*Held,* that the act should be construed to require that where two or more persons apply for an office, one of whom is an honorably discharged Union soldier, and all of whom are equally qualified, the soldier should be preferred, but not to

PEOPLE ex rel. LOCKWOOD v. SARATOGA SPRINGS.  17

Third Department, September Term, 1889.

require the soldier's appointment where the soldier shall not be as well qualified for the office as one of the others.

That the decision of the trustees upon the question of fact as to the relator's qualification for the office, if wrong, could not be corrected in this proceeding.

That as the law conferred upon the trustees the power of selecting their own superintendent and of judging of his qualification for the office, and as there was no evidence that they had not acted in good faith in making their selections that such selection could not be set aside in this proceeding.

Appeal by the relator from an order made at a Special Term, held in Saratoga county June 3, 1889, denying a motion made by the relator for a peremptory writ of *mandamus* requiring the defendants to appoint the relator to the office of superintendent of public works of the village of Saratoga Springs, which order was entered in the office of the clerk of the county of Saratoga..

The following is the opinion delivered by Putnam, J., at Special Term :

Putnam, J.   Relator presents his affidavit, in which he testifies that he is fully competent to perform the duties of said office.   At a meeting of the defendants on May 6, 1889, called to elect a superintendent, he appeared and made application for the appointment, in writing, stating that he was an honorably discharged Union soldier who served in Company D, Seventy-seventh Regiment, New York State Volunteers, and entitled to a preference by virtue of the provisions of chapter 464, Laws of 1887, to said appointment, and he presented his certificate of discharge.   He offered no proof of his capacity for the position before the trustees, but his affidavit states that no question was raised in that regard.   He presents, on this application, his own affidavit and that of nine other citizens, that he is well qualified to perform the duties of the office of superintendent.   None of these affidavits, however, speak of the relator's fitness to perform the duties of the office as compared with Ryall, the person who was appointed by the trustees.

The trustees, in their answering affidavits, in substance, state : That the office of superintendent of public works of the village is of very great importance ; it requires very great ability and business capacity and experience ; that officer has charge, under the trustees, of the streets, sewers, tax lists, highways, public works

and affairs of said village; that they had considered the application of the relator and his claim to the office, under the law of 1887, and the applications of the other candidates; that no proof was offered as to the fitness of either of the candidates for the office. The majority were well acquainted with the relator and his qualifications for the position, and the qualifications of the other candidates; that they came to the conclusion that the relator was not competent for the position of superintendent of said village, and that Ryall was, and that, therefore, in good faith, and not intending to violate the provisions of chapter 464 of the Laws of 1887, they appointed Ryall to the office, who duly qualified and at this time is performing the duties of the office.

The provisions of the law of 1887 should be observed and faithfully carried out. It voices the public feelings of all citizens that the survivors of the brave soldiers, to whom we are indebted for the preservation of our institutions, should be remembered and preferred in the distribution of public office. My appreciation of this fact, however, as well as my knowledge of the estimable character and meritorious services of the relator, will not allow me to interfere by *mandamus* with the reasonable discretion of the board of trustees of the village of Saratoga Springs in selecting a superintendent, if it is, in fact, a case where the law confers upon the trustees a discretion, and it appears, from the papers, that they have exercised that discretion in good faith. The trustees having acted, as they testify, in good faith, and decided that the relator was not qualified for the office, and that Ryall was, and having appointed Ryall, the law having imposed upon them the right and the duty to make the appointment, is this court, under the well-settled doctrine as laid down in many cases, authorized to review the action of the trustees and direct them to make another appointment? On carefully examining the affidavits and papers presented to me, and considering the arguments and points of counsel, I find great difficulty in overruling the action of the trustees in this case. Ryall, the party appointed by the trustees, has qualified and is now acting as superintendent; he is not a party to this proceeding, and no application is made for an order compelling the trustees to remove him, and it is conceded, by counsel for the relator, that any order made here would not affect his title to the office. If I grant the order asked

PEOPLE ex rel. LOCKWOOD *v.* SARATOGA SPRINGS. **19**

THIRD DEPARTMENT, SEPTEMBER TERM, 1889.

for, therefore, the effect would be the appointment by the trustees of two superintendents. Any proceeding to remove Ryall would have to be a separate and subsequent proceeding. The authority of the trustees to appoint a superintendent is under chapter 257, Laws of 1874, and the several acts amending the same. The law only gives the trustees power to appoint one superintendent. If I compel them to appoint two I compel them to do an act beyond their power. I think that a *mandamus* cannot, or, at least, should not, be granted to compel the appointment of the relator unless coupled with an application to remove Ryall. That the order (if granted) to appoint relator should also, and at the same time, command the trustees to displace the present superintendent. Before such an order could be granted, however, Ryall would have to be made a party, and would have a right to appear and be heard in the matter. It is possible that the trustees have no right to remove Ryall, he being regularly appointed by them, except for some cause occurring subsequently to his appointment. (Laws of 1874, chap. 257, § 3.) If so, if Ryall cannot be removed, this would, in my judgment, be a conclusive objection to the granting of this motion. (*People* v. *Contracting Board*, 27 N. Y., 381, 382.)

The act under which the relator claims the office in question (Laws of 1887, chap. 464), provides that "honorably discharged Union soldiers shall be preferred for appointment and employment." It means, as I construe it, that where two or more apply for an office, one of whom is a discharged Union soldier, and all are equally qualified, the soldier shall be preferred, but not where the soldier is not equally qualified for the office as one of the others.

There are degrees of fitness for such an office as the one in question. One candidate might barely be able to perform its duties in a reasonably proper manner, and another might have superior qualifications and be able to do the work much better. In such a case the appointing power, under the law, would not be bound to appoint the former, although a discharged Union soldier.

The trustees, when they met on May sixth, were charged with the duty of deciding the question of fact: Was the relator qualified to perform the very arduous and important duties of superintendent of the village? Was he qualified equally with the other candidates? The law cast upon them the power and the duty of

20 PEOPLE ex rel. LOCKWOOD v. SARATOGA SPRINGS.

Third Department, September Term, 1889.

deciding this question. They had to decide it, and they should have acted, in deciding it, honestly and in good faith. They each, in their affidavits, testify that they did decide the question in good faith and with the provisions of the law of 1887 in view, and with intent to obey the law. I do not think I would be justified in holding that they did not act in good faith; that they have not honestly and fairly intended to do their duty as they have testified. If they have erred in their conclusion, it does not at all, in my view, affect the validity of their action. Judges and jurors often reach erroneous conclusions, but the error cannot be corrected by *mandamus;* the only remedy is by appeal when an appeal lies.

In my judgment the trustees having decided the matter that the law gives them the right to pass upon, their decision cannot be overruled by the Supreme Court.

It is a universal rule in respect to all subordinate tribunals clothed with the exercise of judgment and discretion, that they cannot be compelled by *mandamus* to decide in any particular way. (*People ex rel. Francis* v. *Common Council*, 78 N. Y., 33; *People ex rel. Banks* v. *Board of Education*, 2 Abb. [N. S.], 177; *People ex rel. Dietz* v. *Easton*, 13 id., 161; *People ex rel. Belden* v. *Contracting Board*, 27 N. Y., 381; *People ex rel. Gaige* v. *Reardon*, 49 Hun, 430; *People ex rel. Equitable Life Assurance Society* v. *Chapin*, 103 N. Y., 635; *People ex rel. Millard* v. *Chapin*, 104 id., 100; *People ex rel. Opdyke* v. *Brennan*, 39 Barb., 651; *Howland* v. *Eldredge*, 46 N. Y., 457.) Although the trustees were bound to prefer a soldier, they were not bound to appoint one they deemed incompetent, or one where the other candidate possessed superior qualifications for the office. The law conferred upon them the power and duty of deciding as to the qualifications of the relator and his fitness as compared with Ryall; they have passed upon the question against the relator, and I think the decision is final, whether right or wrong. In *People ex rel. Equitable Life Assurance Society* v. *Chapin* (39 Hun, 230) the court held that *mandamus* was "not a remedy for erroneous decisions. It cannot be addressed to a judicial tribunal to require it to decide in a particular manner." And the court referred to the case of *People ex rel. Francis* v. *Common Council* (78 N. Y., 33), which holds, among other things: "Where the duty of selecting

the person to be employed is imposed by law upon the municipal body, and the question whether they possess the requisite qualifications is one of fact to be determined by it, no particular mode of determination being provided by law, and said body has exercised the power and made the selection, its action cannot be reviewed by *mandamus*, nor can it be compelled by that proceeding to appoint particular persons, on *their* allegations that *they*, in fact, and not the persons actually selected, possess the prescribed qualifications. Where the subordinate body is vested with power to determine a question of fact, the duty is judicial, and it cannot be compelled by *mandamus* to decide in a particular way, however clearly it be made to appear what the decision ought to be." (See, also, 103 N. Y., 635; 104 id., 100, *supra*.)

The matter of the application of the relator for the appointment was passed upon by the trustees at the meeting of May sixth. They knew he was a soldier, but had no evidence of his fitness or unfitness for the office. he desired. But the trustees testify that they knew him and his qualifications, and also the qualifications of the other candidates. They were obliged to pass upon this matter then, and with the evidence before them they did pass upon the question and found against the relator. I am of the opinion that their finding upon the question of fact, as to the relator's qualifications for the office, if wrong, cannot be corrected in this proceeding.

Other questions were raised and discussed before me, but, in the view I have taken of the case, it is not necessary for me to consider or pass upon them. I have been referred to a decision by Judge FORBES in the case of the *People ex rel. Stevens* v. *Bardin.* It is sufficient to say that in that case the fitness of the relator for the position he desired, as well as the fact that he was an honorably discharged Union soldier, was conceded and assumed by the judge in his opinion. No question was raised, as appears by the opinion, as to the qualifications of Stevens for the office he desired; hence that case is entirely unlike the case before us. On the whole, I am of the opinion that I have not the power to grant this application. The law has conferred upon the trustees the power of selecting their own superintendent, and of judging of his qualifications for the office. I am unable to find, from any evidence before me, that they have not acted in good faith in selecting the present incumbent.

I think that their selection cannot be overruled in this proceeding. I, therefore, deny the motion, but without costs.

*Edward J. Maxwell*, for relator, appellant.

*J. L. Henning* and *L. B. Pike*, for the village, respondents.

Present — LEARNED, P. J., and FISH, J.

Order affirmed, with fifty dollars costs and disbursements on opinion of court below.