THE PEOPLE OF THE STATE OF NEW YORK ex rel. JOHN N. MILLIKEN, Respondent, *v.* THE COMMISSIONERS OF THE ALMS-HOUSE OF THE CITY AND TOWN OF NEWBURGH, Appellants.

*Honorably discharged soldiers — employment of, in the public service — a decision by the authorities on the question of capacity will not be disturbed — mandamus.*

By chapter 464 of the Laws of 1887 a preference is given, in the matter of employment on public works, to honorably discharged Union soldiers and sailors, and it is provided that "age, loss of limb or other physical impairment which does not, in fact, incapacitate, shall not be deemed to disqualify them provided they possess the business capacity necessary to discharge the duties of the position involved."

A soldier, who had been refused an appointment as superintendent of an alms-house, applied for a *mandamus* directing the commissioners to appoint him, the affidavit upon which he moved stating nothing as to his capacity to perform the duties.

The commissioners of the alms-house answered that the person whom they had appointed was competent; that they had considered the application of the soldier and deemed him incompetent; and that the duties of the position were onerous and important.

*Held,* that a peremptory *mandamus* was improperly granted.

That the question of the capacity of the applicant was one proper for the consideration of the commissioners, and that the court should not interfere with their decision.

That where a matter of discretion was involved *mandamus* was not a proper remedy.

APPEAL by the defendants, the Commissioners of the Alms-house of the City and Town of Newburgh, from an order of the Supreme Court, entered in the office of the clerk of Orange county on the 30th day of April, 1892, ordering that a peremptory *mandamus* issue, directed to said commissioners, requiring them to appoint the relator, John N. Milliken, superintendent of the poor of the city and town of Newburgh.

*E. A. Brewster*, for the appellants.

*S. E. Dimmick*, for the respondent.

DYKMAN, J. :

This is an appeal from an order directing the issuance of a peremptory writ of *mandamus* commanding the appellants to appoint the relator superintendent of the poor of the city and town of Newburgh.

The order of the Special Term was based upon an affidavit of the relator which stated that he was an honorably discharged Union soldier residing at the city of Newburgh ; and on the 4th day of April, 1892, he filed with the commissioners of the alms-house an application for the appointment of superintendent of the alms-house of that city and town.

That on the 5th day of April, 1892, at a regular meeting of the commissioners, in disregard of his petition, and in defiance of the law, they appointed Chauncey F. Gardiner, who was not a discharged Union soldier, such superintendent for the ensuing year.

The affidavit then closed with a prayer for the issuance of a peremptory writ which should command the defendants to appoint the relator such superintendent.

The affidavit was silent respecting the qualifications of the relator and his competency to perform the duties of the office which he sought. It did not state his age, or whether he had lost a limb or sustained any other physical impairment which might incapacitate or disqualify him.

In ·opposition to the motion, the defendants presented the affidavit of the president of the board of commissioners of the alms-house of the city and town of Newburgh, which consists of six members, in which it was stated that, by the law under which the board was organized, it was made the duty óf the commissioners to appoint an officer denominated the superintendent of the poor of the city and town of Newburgh.

That it was the duty of such officer to reside at the alms-house and have the control and management of the paupers therein, who numbered then about one hundred; to act as secretary of the board and keep its minutes; to keep the accounts of the board; to purchase supplies for the alms-house and temporary relief; to keep an office in the city and receive application for relief; to examine into the circumstances of the applicants and keep a record of such examinations, and generally to perform the duties devolving by law upon the board as its executive officer.

That the office was a very important one and required for its proper discharge very considerable ability, business capacity and experience.

The affidavit further stated that the board met at its annual meeting on the 4th day of April, 1892, for the purpose, among other things, of appointing a superintendent of the poor; that the relator applied for such appointment upon the ground that he was an honorably discharged Union soldier. That the relator was personally known to most of the members of the board, and in their judgment he does not possess sufficient business capacity, knowledge and experience to fit him for a proper discharge of the duties of that office.

That the other applicants were William A. Pressler, who had held the office for the last two years, and Chauncey F. Gardiner, who held the office twelve years and upwards continuously, and who resigned about two years ago in consequence of ill health, but whose health was now restored, and he applied for reinstatement to the office. That Gardiner during his long service gave satisfaction to the board and to the public, and became well acquainted with the poor law system and was able greatly to aid and facilitate the discharge of the duties of the board. That a majority of the board, fairly and in good faith, came to the conclusion that the relator was not competent for the position of such superintendent, and

that Gardiner was the most competent of the three persons seeking the appointment, and the board accordingly appointed him in good faith and without intending to violate the law.

The statute under which this proceeding was instituted is this :

" Sec. 1. In every public department and upon all public works of the State of New York, and of the cities, towns and villages thereof, and also in non-competitive examinations under the civil service laws, rules or regulations of the same, wherever they apply honorably discharged Union soldiers and sailors shall be preferred for appointment and employment; age, loss of limb or other physical impairment which does not, in fact, incapacitate, shall not be deemed to disqualify them, provided they possess the business capacity necessary to discharge the duties of the position involved.

" Sec. 2. All officials or other persons having power of appointment to or employment in the public service as set forth in the first section of this act, are charged with a faithful compliance with its terms, both in letter and spirit, and a failure therein shall be a misdemeanor.

" Sec. 3. This act shall take effect immediately." (Chapter 464, Laws of 1887.)

It was the intention of this statute to give to honorably discharged Union soldiers and sailors a preference for appointment and employment in every public department and upon all public works of the State of New York, and of the cities, towns and villages thereof, and also in non-competitive examinations under the civil service laws, rules and regulations of the same wherever they apply, without disqualification by reason of age, loss of limb or other physical impairment which does not, in fact, incapacitate, provided they possess the business capacity necessary to discharge the duties of the position involved. But the proviso governs the operation of the whole statute. If the soldier or sailor possesses the business capacity necessary to discharge the duties of the position involved, he has the preference. If he is destitute of such capacity, he is not within the provisions of the law and can derive no benefit therefrom. Capability is the prerequisite to the reception of the preference.

It was not the design of the statute to debase the public service by requiring the appointment of incompetent men to discharge the duties of public positions, or to elevate heroism above competency

independent of other considerations. Patriotism is to be honored and rewarded in appropriate ways, but not by the distribution of public offices. Such being the manifest design of the statute, its application to this case is simple and easy.

It was the duty of the alms-house commissioners to appoint a superintendent of the poor of the city and town of Newburgh. It was an important office and required the exercise of great care, discretion, knowledge and business capacity. The incumbent is required to take charge of the inmates of the alms-house, disburse the poor fund and keep the accounts, act as secretary and executive officer of the board and purchase the supplies. The selection of a fit person to discharge such duties and fill the office was entrusted to the board, and it was the peculiar province of that body to make the selection of the officer subject to no judicial control. The power of appointment was vested in the commissioners, they were personally acquainted with the relator, and in their judgment he did not possess sufficient business capacity, knowledge and experience to fit him for a proper discharge of the duties of this office, and they said so in their affidavit in opposition to the motion, and that fact was undisputed.

Discretion and power to determine the qualification of applicants for the office in question being vested in the commissioners, it was their duty to exercise the power, and if the relator was found wanting and unqualified by them, he cannot force his appointment. Having decided the question upon which they were authorized to pass in good faith, their decision cannot be overruled by this court. Subordinate bodies and tribunals clothed with the power to exercise judgment and discretion cannot be compelled by *mandamus* to decide in any particular way. (*People ex rel. Lockwood* v. *Trustees of Saratoga,* 7 N. Y. Supp., 125; S. C., 54 Hun, 16; *People ex rel. Francis* v. *Common Council,* 78 N. Y., 33.) So far the case is plain upon a consideration of the statute alone, but the reported cases which have arisen under the law have all been decided in consonance with the views here expressed.

In the case of Barden (7 N. Y. Supp., 123) where the writ of *mandamus* was issued, the fitness of the relator for the position he sought was conceded and assumed. Here it was denied by the defendant and not even asserted by the relator. In the case of *The People ex*

*rel. Lockwood* v. *Trustees of Saratoga* (*supra*), it was held where two or more persons apply for an office, one of whom is an honorably discharged Union soldier, and all of whom are equally qualified, the soldier should be preferred, but the act should not be construed to require the soldier's appointment where he is not as well qualified for the office as one of the others. It was there also further held that the decision of the trustees in that case upon the question of fact respecting the relator's qualification for the office, if wrong, could not be corrected in that proceeding for a *mandamus.*

The opinion in that case, delivered by Judge PUTNAM at the Special Term, was adopted by the General Term, and the order denying the motion for a *mandamus* was affirmed on that opinion, which is clear, full and exhaustive, and meets with our full approval. The principles enunciated in that opinion are applicable to this case and decisive of this appeal. The case of *The People ex rel. Ballou* v. *Wendell* (57 Hun, 363) is in accord with our views.

Since the preparation of the foregoing opinion the decision of the Court of Appeals in the case of the *People ex rel. Wren* v. *Goetting* (44 N. Y. St. Rep., 503) has been received, and it was there decided that *mandamus* was not the proper remedy in a case similar to this, and in the opinion it is said : " The office claimed is filled by another person holding under color of right, and the question of the title to the office turns upon the construction of statutory provisions. It would be highly inappropriate to determine such a question in a *mandamus* proceeding. The appropriate remedy, and an adequate one, is by information in the nature of *quo warranto*, in which proceeding the incumbent of the office can be heard in his own behalf upon the disputed question."

In no view, therefore, can the relator maintain this proceeding, and the order should be reversed, with ten dollars costs and disbursements ; and the motion for a writ of *mandamus* should be denied, with ten dollars costs.

CULLEN, J., concurred ; BARNARD, P. J., not sitting.

Order reversed, with ten dollars costs and disbursements : and motion granted, with ten dollars costs.