PHELPS, Plaintiff, v. BYRNE, Governor, Defendant.

(154 N. W. 825.)

(File No. 3923.   Opinion filed November 19, 1915.)

1.  **Mandamus—Officers—Superintendent of State Board of Health—Executive Appointment—Honorably Discharged Soldier, as Applicant—Discretionary Action—Statutes.**

Under Laws 1913, Ch. 109, empowering and requiring the Governor to appoint the members of the state board of health and medical examiners, and to designate one of such appointees as superintendent of the board, and requiring that such appointees shall be "skilled and capable physicians," and Pol. Code, Secs. 3242, 3243, providing, among other things, that in every public department of the state honorably discharged Union soldiers shall be preferred for appointment, and that age, loss of limb or other physical impairment which does not incapacitate shall not be deemed to disqualify them, provided they possess the requisite qualifications and business capacity necessary to discharge the duties of the position involved, and making it a misdemeanor for any officials or other appointing power to neglect or refuse to comply with the provisions of Sec. 3242, held, that in making an appointment to the office of superintendent of said board of health, the Governor is not performing a mere ministerial act; that in making such appointment he is given discretion in determining who, among applicants for such office, is "skilled and capable," in view of the fact that Sec. 1 of said Ch. 109 prescribes that members of said board should be "resident physicians of the state, in good standing, and shall have resided and practiced within this state not less than five years;" that it is common knowledge that members of no learned profession are all possessed of equal skill and capability.

2.  **Mandamus—Appointment to State Board of Health—Honorably Discharged Soldier as Applicant—Mandamus Against Governor, as Remedy—Effect of Disregard of Statute.**

24—Vol. 36, S. D.

Mandamus is not the proper remedy, where one claiming to be an honorably discharged Union soldier applies to the Governor to appoint him as superintendent of the state board of health and medical examiners, under Laws 1913, Ch. 109, empowering and requiring the Governor to make such appointments from among "skilled and capable physicians," who shall have been residents of the state and have practiced therein for five years, and of good standing, and under Pol. Code, Sec. 3242, providing, among other things, that in public departments of state honorably discharged Union soldiers shall be preferred for appointment, and that age, loss of limb or other physical impairment not incapacitating shall not be deemed to disqualify them, provided they possess the requisite qualifications and business capacity; since disobedience or disregard of the statute does not violate the legal rights of any particular person, so as to enable him to maintain any civil proceedings in his own behalf; the offense being merely a public one.

Original proceeding, by Oscar W. Phelps, against Frank M. Byrne, Governor, to obtain a writ of mandamus requiring the defendant to appoint plaintiff to the office of superintendent of the State Board of Health and Medical Examiners. Writ denied.

*W. A. Lynch*, for Plaintiff.

*Byron S. Payne*, Assistant Attorney General, for Defendant.

(1) To point one of the opinion, Defendants cited: State v. Copeland, 74 Minn. 371, 77 N. W. 221; Allison v. Board, 125 Cal. 72, 57 Pac. 673; People v. Comm'rs, 65 Hun 169, 20 N. Y. Supp. 21; People v. Simonson, 64 N. Y. App. Div. 312, 72 N. Y. Supp. 84.

(2) To point two of the opinion, Defendants cited: Pol. Code, Sec. 3242; State v. Copeland, supra; People v. Keating, 49 N. Y. App. Div. 123, 63 N. Y. Supp. 71; People v. Ballston, 44 N. Y. Supp. 471, 19 Misc. 671; People v. Comm'rs, supra; Robertson v. Albertson, (Ia.) 114 N. W. 885; McBride v. City Council, 110 N. W. 157; People v. Goetting, (N. Y.) 30 N. E. 968; People v. Ruff, 90 Hun 145, 35 N. Y. Supp. 349, 749.

WHITING, J. Chapter 109, Laws 1913, creates a board of public health and medical examiners, and defines the powers and duties of such board. Under its provisions the Governor is empowered and required to appoint the members of such board and to designate one of such appointees as the superintendent of the board. Three vacancies occured on July 1, 1915, through the ex-

piration of the terms of certain members of such board, one member whose term expired being the superintendent. The act makes no provision for the filing of an application with the Governor by one seeking appointment as a member of such board. It provides that the appointees shall be "skilled and capable physicians" resident in this state, and shall have practiced within this state not less than five years preceding their appointment. Sections 3242 and 3243, P. C., provide:

"Sec. 3242. In every public department and upon all public works of the state of South Dakota, and of the cities, towns and villages thereof, honorably discharged Union soldiers and sailors of the late war shall be preferred for appointment; age, loss of limb or other physical impairment which does not in fact incapacitate, shall not be deemed to disqualify them, provided they possess the requisite qualifications and business capacity necessary to discharge the duties of the position involved.

"Sec. 3243. All officials or other appointing power in the public service who shall neglect or refuse to comply with the provisions of the preceding section shall be deemed guilty of a misdemeanor, and shall on conviction thereof be punished by a fine not exceeding one thousand dollars or by imprisonment for a term not exceeding one year, or by both such fine and imprisonment at the discretion of the court."

The relator presents a petition wherein he alleges, among other things, that he is a citizen of this state; that several months prior to July 1, 1915, he filed with the Governor an application seeking appointment to the office of superintendent of such abovementioned board when the vacancy should occur therein through the termination of the superintendent's term; that such application disclosed that he was an honorably discharged Union soldier of the War of the Rebellion, a holder of a certificate to practice medicine within this state, a resident physician in good standing within this state for more than ten years, in no manner incapacitated to fill the position sought, and that a vacancy would occur in the position of superintendent of such board on July 1, 1915; that he was the only honorably discharged Union soldier of the late war who was an applicant for such office; that it became and was the duty of the Governor to appoint him to the office sought; that, disregarding such duty, the Governor had appointed another

party, not an honorably discharged Union Soldier of the late war. to such position; that such appointment was null and void; that the Governor still refuses to appoint relator to such position. Upon the facts thus alleged, he seeks a writ of mandamus commanding the Governor of this state to appoint him to the position sought. Relator's counsel concedes:

"That this court cannot, by mandamus, or by any other process, control the defendant in the exercise of his political functions conferred on him by the Constitution; and that this court cannot control him in the performance of any duty when judgment and discretion is to be exercised."

He, however, asserts:

"That this court can, by this process, control the Governor in the performance of a purely ministerial duty when neither judgment nor discretion is to be exercised."

Although respondent has not questioned the correctness of this assertion, we find it unnecessary to determine or express any views upon the much disputed question of whether a state court can ever control the actions of the Governor of such state, even though the act sought to be controlled is but ministerial in its nature.

[1] We decide nothing but: (1) That, in the exercise of the power to make an appointment to the office in question, the Governor is not performing a mere ministerial act; (2) that mandamus is not the proper remedy to procure the result sought by relator.

Counsel for relator says:

"This law fixes the qualifications of these officers. They must be resident physicians of the state in good standing, and must have resided and practiced five years in this state next preceding their appointment. These are the sole and only qualifications. In addition to these qualifications, however, any physician now engaged in the practice is required to be licensed to practice, and all medical practitioners are subject to have their license revoked for drunkenness, for immoral practice, or unprofessional conduct. This license is a guaranty to the public that every medical practitioner is a skilled and capable physician and in good standing in his profession. In addition to this, it is a guaranty to the Governor that all physicians practicing in the state are skilled and capable physicians and of good standing. The only facts the Governor is required to know are the facts which the law prescribes for qualifica-

tions to membership on this board. The license is conclusive of their standing and of their skill. Any licensed physician in this state who has resided and practiced in this state for five years, next preceding the term of appointment prescribed in the law, is eligible to appointment on this board. * * *

"The plaintiff is an honorably discharged Union soldier. This fact makes it incumbent on the Governor to appoint him a member of this board. He has no discretion, and is not required to use judgment. Here are two men, both physicians, holding license to practice, both residents of this state for the time required by law, one an honorably discharged Union soldier, and the other not. The law says. 'Appoint the soldier,' The Governor says: 'What about my discretion and my judgment?' The law says: 'You have no discretion, nor do you have any right to exercise any judgment.' * * *

"The offices in question are not positions that require business talent. This is a professional board, and its membership are required to be members of the medical profession. The functions of the office are entirely outside of the domain of business."

Counsel has cited no authority to support his position. We apprehend that, if any were to be found, he would have referred to same. If the Governor is given no discretion, then certainly the words "skilled and capable," used in designating what kind of physicians should be appointed, are meaningless, in view of the fact that the law had already prescribed that the members of the board should be "resident physicians of the state, in good standing, and shall have resided and practiced within this state not less than five years." Laws 1913, c. 109, § 1. Private individuals, when seeking professional service, are given the privilege of exercising discretion as' to whom they shall select for such service, and this even as among those who have received the state's license to practice the particular profession. It is certainly startling if relator is correct in his contention, and the Governor of this state, and through him the people of this state, are deprived of the right to select for an important official position that person deemed most skilled and capable therefor, and deprived of such right simply because some applicant who holds a certificate making him eligible for such position also chances to be an honorably discharged soldier. It is a matter of common knowledge that the

members of no one of the learned professions are all possessed of equal skill and capability; the members of any profession differ in natural ability, as well as in skill acquired through study and experience. Can it be possible that, if vacancies should occur in the officers of secretary of state and Attorney General, the Governor of this state would be free to determine the relative qualifications and business capacities of all those who might aspire to the one office, but, when selecting a person to fill the other office, if some applicant should present not only a license as an attorney at law, but also an honorable discharge as an old soldier, would be foreclosed from comparing such applicant's legal qualifications with those of other applicants, and would be obliged to appoint him to the office of Attorney General of this state, when, perchance, he would not be willing to intrust in his care his own legal work? If the Governor should be called upon to fill a vacancy upon either the circuit or Supreme Court bench, would the mere fact that some honorably discharged old soldier holding a license as an attorney at law was an applicant for the position to be filled prevent the Governor from appointing some one else to such position, and this regardless of the legal skill and learning of such old soldier, if the Governor believed such old soldier, with all his skill and learning, yet lacked those qualifications essential to a jurist? Human experience teaches that peculiar qualifications are requisite in order that persons may be fitted for particular fields of action. A certificate authorizing one to practice some profession, while it may render its holder eligible to hold some particular office, is no evidence that he possesses any peculiar qualification that may be essential to the proper discharge of the duties of such office. The board of health of this state has general supervision of all the health officers and boards throughout the state; it must investigate sanitary conditions, learn the causes and sources of diseases and epidemics, observe the effect upon human health of localities and employments, and gather and diffuse proper information upon all subjects to which its duties relate; it gathers, collects, and publishes medical and vital statistics; it advises all state officials and boards in hygiene and medical matters, especially those involved in the proper location, construction, sewage, and administration of prisons, hospitals, asylums, and other public institutions; it must adopt, alter, and enforce regulations for the preservation of

public health; it must hold examinations of those desiring to en-gage in the practice of medicine and license those found fitted to become practitioners; it must, in proper cases, revoke the licenses that have been issued by it. The above are some of the duties im-posed upon this board by the law creating it. The most important member of this board, the one whose time is supposed to be fully given to the work of this board and upon whom the greatest re-sponsibility rests, is the superintendent thereof. It needs no spe-cial knowledge for any one to understand that such a board will either be of inestimable value to the people of this state, or, on the other hand, of practically no value to them, dependent upon the peculiar qualifications of its members, and more especially depend-ent upon the peculiar qualifications of its superintendent. The state of New York has a statute almost identical in its provisions with sections 3242 and 3243, supra. In People v. Trustees, 54 Hun, 16, 7 N. Y. Supp. 125, the court said:

"The act under which the relator claims the office in ques-tion (chapter 464, Laws 1887) provides that 'honorably discharged Union soldiers shall be preferred for appointment and employ-men.' It means, as I construe it, that where two or more apply for an office, one of whom is a discharged Union soldier, and all are equally qualified, the soldier shall be preferred; but not where the soldier is not equally qualified for the office as one of the others. There are degrees of fitness for such an office as the one in question. One candidate might barely be able to perform its duties in a reasonably proper manner, and another might have superior qualifications, and be able to do the work much better. In such a case, the appointing power, under the law, would not be bound to appoint the former, although a discharged Union soldier."

And again in People v. Commissioners, 65 Hun, 169, 20 N. Y. Supp. 21, the court, speaking of the same statute, says:

"It was the intention of this statute to give to honorably dis-charged Union soldiers and sailors a preference for appointment and employment in every public department and upon all public works of the state of New York and of the cities, towns, and vil-lages thereof. * * * Whenever they apply, without disqualifi-cation by reason of age, loss of limb, or other physical impairment which does not, in fact, incapacitate, provided they possess the

business capacity necessary to discharge the duties of the position involved; but the proviso governs the operation of the whole statute. If the soldier or sailor possesses the business capacity necessary to discharge the duties of the position involved, he has the preference. If he is destitute of such capacity, he is not within the provisions of the law, and can derive no benefit therefrom. Capability is the prerequisite to the reception of the preference. It was not the design of the statute to debase the public service by requiring the appointment of incompetent men to discharge the duties of public positions, or to elevate heroism above competency, independent of other considerations."

[2] The Supreme Court of Minnesota has so fully and clearly discussed the question of whether mandamus is a proper remedy under facts such as are alleged herein that we can do no better than to dispose of this feature of the case by quoting freely from what that court said in State v. Copeland, 74 Minn. 371, 77 N. W. 221. The statute before them was almost identical in language with section 3242, P. C., supra. That court said:

"The appointing power is in the board, and not in the courts; and, even if the latter could compel the former to remove the present incumbent, they could not compel the board to appoint the relator. The board would still have discretion as to what soldier or sailor they would appoint. In refusing to appoint the relator, they violate no legal right of his, but, at most, merely violate the general mandates of the statute. Hence, if a writ of mandamus was to issue, it would be merely to compel the board to execute the mandates of the law, not in favor of the relator in particular, but in favor of all persons within its provisions. This would be merely to duplicate the act of the Legislature in enacting the statute. Such is not the office of a writ of mandamus. Again, the determination of the qualification of a person for employment in the public service involves the exercise of judgment and discretion, which is vested in the appointing officers or body, and not in the courts. But, if a person can maintain mandamus to compel his own appointment, this would necessarily require the courts to hear evidence and pass upon the fitness of the relator, and thus would devolve the appointing power upon the courts—a result which finds no support in the statute. All this, and much more which might be suggested, satisfies us that disobedience or disregard

of the directions of this statute does not violate the legal rights of any particular person, so as to enable him to maintain any civil proceedings in his own behalf. The wrong or offense is merely a public one, and the only remedy, if any, is by removal of the appointing officers for malfeasance in office, or, this failing, by appeal to the people. We can conceive of a statute constituting a full body of civil service rules, which, when applied to the facts, would identify the particular person entitled to an appointment so as to give him a legal right to it which could be enforced by him. But this is not such a law. It may be said that our construction of this statute renders it practically nugatory. This will undoubtedly be so when appointing officers or bodies are disposed to disregard the law, but this is the result either of the defective character of the statute, or of the inherent nature of the subject of which it treats, or of both."

The writ prayed for is denied.