THE PEOPLE OF THE STATE OF NEW YORK EX REL.
JOHN J. O'BRIEN, Respondent, v. STEPHEN B. FRENCH
AND OTHERS, CONSTITUTING THE BOARD OF POLICE OF THE
CITY OF NEW YORK, APPELLANTS.

*Civil service examination — "election officers" in New York city are not subject
thereto — honorably discharged Union soldiers or sailors have a preference in such
appointments — construction of the statute upon this subject.*

The chief of the bureau of elections in the city of New York in office on May 24,
1884, was not required by law to pass a civil service examination prior to his
reappointment.

While such chief of the bureau of elections can lawfully be reappointed to that
position, without undergoing a civil service examination, yet if there be any
other qualified candidates for that position, who are honorably discharged Union
soldiers or sailors, the chief cannot be reappointed.

Chapter 357 of the Laws of 1884, declaring election officers exempt from civil
service examination is a particular enactment, and is not affected by the pro-
visions of chapter 410 of the Laws of 1884, which is a general enactment,
requiring such examination to be had of candidates for office.

The general presumption is that a later statute, dealing in general terms with the
subject, and not expressly contradicting the provisions of a prior act, is not
intended to affect a more particular provision of such prior enactment.

The provisions of chapter 464 of the Laws of 1887, relating to the employment of
honorably discharged Union soldiers and sailors, are not limited in their applica-
tion to those departments or works of the State in which the employees are
subject to civil service examination.

APPEAL by the commissioners of police of the city of New York
from an order entered in the office of the clerk of the county of New
York on the 15th day of November, 1887, granting a motion made
by the relator that a writ of *mandamus* issued out of and under the
seal of this court, requiring and directing the board of police to con-
sider the relator as eligible for reappointment by said board of police
to the office of clerk of the bureau of elections, a bureau in said
department of police.

*David J. Dean*, for the appellants.

*John E. Brodsky*, for the respondent.

BARTLETT, J.:

Two questions are presented by this appeal:

*First.* Has the board of police the power to appoint the relator

346          PEOPLE ex rel. O'BRIEN v. FRENCH.

FIRST DEPARTMENT, JANUARY TERM, 1889.

to the office of chief of the bureau of elections, irrespective of the question whether he has passed a civil service examination or not?

*Second.* If the board of police has such power, can the relator be preferred for appointment over other qualified candidates who are honorably discharged Union soldiers or sailors?

I think the first of these questions must be answered in the affirmative, and the second in the negative.

On May 24, 1884, the legislature passed an act amending the first civil service law. One of the amendments thus enacted was as follows :

" Section 8. The election officers now in office and the inspectors of election and poll-clerks shall be exempt from examination in accordance with the act hereby amended, or the amendments thereof, and it shall be the duty of the commissioners and mayors of cities so to provide in regulations made under said act." (Laws of 1884, chap. 357.)

At the time this provision went into effect the relator was chief of the bureau of elections in the city of New York. He was, therefore, clearly an election officer then in office within the meaning and intent of the act, and no doubt as to his eligibility for reappointment without examination could have arisen unless there had been further legislation on the subject. Five days after the enactment of the amendment above quoted the legislature amended the original civil service law still further by passing chapter 410 of the Laws of 1884, which, among other things, provides that, after the termination of three months from the passage thereof, no officer or clerk shall be appointed and no person shall be admitted to, or be promoted in either of the classes for which provision is made, until he has passed an examination, or is shown to be exempted from such examination, in conformity with the regulations prescribed under the statute. (Session Laws of 1884, p. 488.)

The appellants contend that the act of May 24, 1884, so far as it exempted the relator from examination as an election officer then in office, was repealed by the act of May 29, 1884, prohibiting the appointment of any person until he has passed an examination, or is shown to be exempt therefrom under the civil service regulations. The court below rejected this view on the strength of an opinion written by Mr. E. H. Lacombe, now circuit judge of the United States, when he was counsel to the corporation, in which he con-

PEOPLE ex rel. O'BRIEN v. FRENCH.          347

First Department, January Term, 1889.

strued both enactments together as being statutes *in pari materia*, and held that election officers, inspectors of election and poll-clerks remained exempt from examination, notwithstanding the provisions of the second amendatory act. In this conclusion, I think he was clearly right. The rule which is the guide to a correct decision in such cases has never been better stated than it was by Lord Mansfield, when he said: "All acts *in pari materia* are to be taken together as if they were one law." (*Earl of Ailesbury* v. *Pattison*, Douglas Rep., 30.) The statutes under consideration here relate to the same subject-matter, the regulation and improvement of the civil service throughout the State, and are, therefore, *in pari materia*, and must be so interpreted as to give force to every provision they contain, if this be possible, as though all were found in a single act. The second statute contains no express words repealing the exemption established by the first; and the general rule, that repeals by implication are not favored, applies with peculiar force in the case of acts passed at the same session of the legislature.

In *Black* v. *Scott* (2 Brock., 325, 328) Chief Justice Marshall, speaking of two acts of the Virginia legislature, which came before him for construction, and one of which, it was contended, had the effect to limit and control the other, observed: "It has been truly said that these two acts, having been passed at the same session, respecting the dignity of claims on the estates of deceased persons, ought to be considered together, and that the two sections ought to be construed as if they were contained in the same act."

"Statutes enacted at the same session of the legislature," says Allen, J., in *Smith* v. *People* (47 N. Y., 330, 339), "should receive a construction, if possible, which will give effect to each. They are within the reason of the rule governing the construction of statutes *in pari materia*. Each is supposed to speak the mind of the same legislature, and the words used in each should be qualified and restricted, if necessary, in their construction and effect, so as to give validity and effect to every other act passed at the same session." To the same effect is the decision in the case of the *State* v. *Rackley* (2 Blackf. [Ind.], 249, 250.)

In Kentucky an act of the legislature prescribed that a particular form of recognizance should be taken in certain cases. This form concluded with the words, "Witness my hand and seal."

Subsequently, at the same session, the legislature passed an act abolishing the use of seals, and the distinction between sealed and unsealed instruments. But the Kentucky Court of Appeals held that the second act did not repeal the first. Being passed at the same session, they were to be construed as one act on the same subject, and it ought not to be presumed that the mind of the legislature had undergone so sudden a change as would be involved in giving the second statute the effect of a repeal. (*Peyton* v. *Moseley*, 3 Monroe [Ky.], 77, 80.)

In *Cain* v. *The State* (20 Tex., 355, 358), the rule was said to be, "that in the construction of acts of the same session, the whole must be taken and construed as one act, and to make a later provision repeal a former, there must be an express repeal, or an irreconcilable repugnancy between them."

In the case of *Powers* v. *Shepard* (48 N. Y., 540), the question before the Commission of Appeals was whether a part of the chapter 29 of the Laws of 1865 was repealed by chapter 41 of the Laws of the same year, both being enactments relating to soldiers' bounties. In holding that there was no repeal, Earl, C., said: "It is hardly to be presumed that the Legislature would have repealed an act passed but fourteen days before, and if they had intended to do so, they would probably have said so in some appropriate language, and not left it to mere inference." The difference of time in the enactment of the statutes in question in the case at bar was but five days, instead of fourteen.

The statutory provisions under consideration here are both amendatory of the original civil service act. (Laws of 1883, chap. 354.) They are to be read, therefore, as parts of that act. There is no such conflict between them as renders it necessary to reject the earlier amendment, upon which the relator relies for the exemption which he claims. The provision declaring election officers exempt from examination is a particular enactment, while that requiring candidates for office to be examined is general; and the presumption is that a later statute dealing in general terms with a subject, and not expressly contradicting the provisions of a prior act, was not intended to affect the more particular provisions of the prior act, unless it is necessary to infer such a design in order to give meaning to the words employed. (*Williams* v. *Pritchard,*

PEOPLE ex rel. O'BRIEN v. FRENCH.      349

First Department, January Term, 1889.

4 T. R., 2; *Williams* v. *Williams*, 8 N. Y., 525, 533.) But here, I think, can be little doubt of the legislative intent that both provisions should stand together, and that election officers, by reason of the previous and particular exemption clause in their favor, enacted on May 24, 1884, should be deemed excepted from the general requirement of examination subsequently prescribed on May 29, 1884.

The peculiar phraseology of the exemption clause (§ 8, chap. 357, Laws of 1884) strongly manifests such an intent. "The election officers now in office * * * shall be exempt from examination in accordance with the act hereby amended," that is, the original civil service act, "or the amendments thereof." What amendments? Obviously, the further amendments which the legislature must then have had under consideration and in contemplation, which became law five days afterward and which included the general provision as to the examination of candidates for admission into the civil service. Thus, in effect, the legislature said that it intended the exemption clause to qualify the civil service act as that act might be altered by the amendments it meant presently to adopt. The result of this construction of the two statutes is not hostile to the general purpose of the civil service reform laws. It might fairly and reasonably be assumed that the large majority of persons in office would, when their terms expired, have become so familiar with their duties by experience, and so qualified to perform them, as to make any further test of their fitness unnecessary. As to the first point, therefore, my conclusion is favorable to the relator.

It seems equally clear, however, that while he is eligible to reappointment as chief of the bureau of elections without undergoing a civil service examination, he cannot lawfully be reappointed if among the other qualified candidates there are honorably discharged Union soldiers or sailors.

There are at least two statutes which entitle the veterans of the late war to a preference. Chapter 29 of the Laws of 1886 declares that they shall be preferred over all other persons for appointment to positions, in the civil service of the State and of cities, although graded lower, upon examination, than others found eligible, provided their qualifications and fitness shall have been ascertained as provided in the civil service acts. It might be argued that this provision gave

350    PEOPLE ex rel. O'BRIEN v. FRENCH.

FIRST DEPARTMENT, JANUARY TERM, 1889.

them a preference only over other candidates who were required to be examined, and hence did not apply to the case of the relator who is exempt from examination. But no such view can be taken of chapter 464 of the Laws of 1887, which provides that in every public department, and upon all public works of the State and of the cities, towns and villages thereof and also in non-competitive examinations under the civil service laws, rules or regulations, honorably discharged Union soldiers and sailors shall be preferred for appointment and employment. All officials or persons having the power of appointment or employment in the public service "are charged with a faithful compliance" with the terms of the act, both in letter and spirit, and a failure therein is declared to be a misdemeanor. This statute constrains the board of police to prefer Union soldiers and sailors for appointment to the office of chief of the bureau of elections. It does not operate to deprive election officers who were in office on May 24, 1884, of the benefit of the exemption conferred upon them by the act of that date. That exemption involved no right to a preference. It merely absolved them from a requirement which was or might be imposed upon other applicants for appointment. The subsequent legislation in favor of Union veterans leaves unimpaired the statutory exemption of election officers to whom the act of May 29, 1884, applied. But it subjects them, as well as all other non-military candidates for appointment, to the preference which it gives to those who served honorably in the Union army or navy.

The counsel to the corporation is, therefore, right in insisting that, at all events, the writ of *mandamus* herein should contain a proviso that the discharged Union soldiers and sailors who have been certified as competent by the civil service commissioners after examination, shall be preferred over the relator for the appointment to the office of chief of the bureau of elections.

The order appealed from should be modified so as to provide for such addition to the writ, and, as so modified, should be affirmed, without costs.

VAN BRUNT, P. J.:

I do not think that the question as to the preference to be given to discharged Union soldiers and sailors can be raised on this appli-

cation. The relator is entitled to be put upon the eligible list without examination, and this is all, as I understand it, that the *mandamus* pretends to do, whether or not after he is put upon the eligible list the relator should or could not be appointed under the facts disclosed is not before the court.

The order appealed from should be affirmed, with costs.

BRADY J., concurred.

Order appealed from affirmed, with costs.