PEOPLE *ex rel.* PHILANDER D. ELLITHORPE, Appellant, *v.* JUDGES OF THE SUPERIOR COURT OF BUFFALO, Respondents.

*Supreme Court, Fifth Department, General Term, April,* 11, 1890.

*Civil service act. Veterans.*—The judges of the superior court of Buffalo have power to remove an honorably discharged Union soldier from the office of crier of such court.

See note at end of case.

Appeal from the order of the Erie special term, denying the relator's motion to compel the respondents to rescind their action removing him as crier of the superior court of Buffalo, and to reinstate him therein.

*H. J. Swift,* for appellant.

*Adelbert Moot,* for respondents.

MACOMBER, J.—The jurisdiction of this court to entertain an application of this kind is called in question by the respondent's counsel. But there is no such limitation put upon its jurisdiction, which is declared by Art. 6 of the constitution to be general in law and in equity, subject only to the appellate jurisdiction of the court of appeals. If, therefore, there is any tribunal before which this proceeding could be maintained, it is the supreme court. People *ex rel.* The Mayor *v.* Nichols, 79 N. Y. 582.

The relator, who is an honorably discharged soldier of the late civil war, was appointed crier of the superior court of Buffalo, October 11, 1878, which post he continued to hold until September 27, 1889, when (in accordance with an order made on the 19th day of August 1889), he was without a hearing removed by a majority of the judges of that court and another person appointed in his place.

The relator's rights are rested entirely upon chap. 119 of

the Laws of 1888, approved April 10, 1888, to take effect immediately, which is an act relating to employees of the various cities and counties of the state, and is as follows : " Section 1. No person holding a position by appointment in any city or county of this state, receiving a salary from such city or county (unless he has been appointed for a definite term), who is an honorably discharged soldier, sailor or marine, having served as such in the Union army or navy during the war of the rebellion, shall be removed from such position, except for cause shown after a hearing had ; but this provision shall not be construed to apply to the position of private secretary, or chief clerk, or deputy of any official or department, or to any other person holding a confidential relation to the appointing officer. Sec. 2. All laws, or parts of laws, inconsistent with the provision of this law are hereby repealed."

Prior to the enactment of this statute, and by § 301 of the Code of Civ. Pro., the judges of the superior court of Buffalo, or a majority of them, were required from time to time to appoint, and permitted at pleasure to remove, a crier of the court. It is contended by the learned counsel for the appellant that this section of the Code was repealed by the act of 1888, already quoted ; but whether a provision of the Code of Civ. Pro. having a local application only can be deemed to be repealed by such general words as are here used may well be doubted. But it is not necessary, for the decision of this case upon its merits, to enter upon that subject. For the intent of the legislature in this particular is clearly disclosed by chap. 243 of the Laws of 1888, taking effect May 8th of that year, nearly a month later than the act for the protection in office of honorably discharged soldiers and sailors, by which the right of the judges of the superior court of Buffalo, or a majority of them, to remove at pleasure the crier of that court, is re-enacted with other provisions respecting salaries and the duties of the crier. If there is any inconsistency between the provisions of

these two acts, that which was subsequently passed must be deemed to repeal the prior one. It is the last expression of the legislative will, and if repugnant to or irreconcilable with any previous act, it necessarily annuls the former, if both cannot stand together. Potter's-Dwarris on Statutes and Constitutions, 155, and note ; Smith *v.* People, 47 N. Y. 330 ; Black *v.* Scott, 2 Brock. 325 ; Cain *v.* The State, 20 Tex. 355 ; People *ex rel. v.* French, 51 Hun, 345 ; 20 N. Y. State Rep. 928.

Judgment appealed from should be affirmed, with costs.

DWIGHT, P. J., and CORLETT. J., concur.

## NOTE ON " N. Y. CIVIL SERVICE ACTS."

One of the most important of the principles of this new system of filling the civil offices was that, where the political views of the incumbent of public office, could not rightfully affect, or in any manner determine, the means or methods of the performance of his official duties, and where he stood in no confidential position towards a superior, in such case his appointment to, or his tenure of, such office should in no way depend upon or be affected by his " politics." Rogers *v.* Common Council, etc., 123 N. Y. 173. Instead of the old method of obtaining an appointment, a new one was proclaimed, which was to be based solely upon merit, to be proved by an open, public and competitive examination, free to all candidates. The person, who was the best qualified, under all proper circumstances, was to be appointed. Legislation looking to this end was enacted in New York. Id.

These acts provide for the appointment by the governor, and for the confirmation by the senate, of three persons as state civil service commissioners, not more than two of whom shall be adherents of the same party. This last provision, preventing the formation of the civil service board of commissioners from one political party, is not in violation of § 1, art. 1, of the Constitution. Id. A citizen is not, within the meaning of this section, in such case disfranchised, nor is he deprived of any right or privilege secured to any other citizen of the state. Id.

It is equally apparent that the statute does not violate the provisions of § 6 of the same article of the Constitution, prohibiting any person from being deprived of life, liberty or property without due process of law.

Neither does it violate § 2, art. 10, of the Constitution, which provides

that all city, town and village officers, whose election or appointment is not provided for by this Constitution, shall be elected by the electors of such cities, towns or villages, or of such divisions thereof, or appointed by such authorities thereof, as the legislature shall designate for such purpose. Id.

The statute does not conflict with article 12, which provides for the taking of an oath of office by members of the legislature, and all officers, executive and judicial, before they enter on the duties of their respective offices, which oath is therein set forth, and wherein it is stated that no other oath, declaration or test shall be required as a qualification for any office of public trust. Id. The framers of the Constitution never intended to oppose a constitutional barrier to the right of the people, through their legislature, to enact laws which would have, for their sole object, the possession of fit and proper qualifications for the performance of the duties of a public office on the part of him who desired to be appointed thereto. Id. The imposing of a test, by means of which to secure the qualifications of a candidate for an appointive office, of a nature to enable him to properly and intelligently perform the duties of such office, violates no provision of the Constitution. Id.

*Act of* 1884.—On May 24, 1884, the legislature passed an act amending the first civil service law. It amended section 8 as follows : § 8. The election officers now in office and the inspectors of election and poll-clerk shall be exempt from examination in accordance with act hereby amended, or the amendments thereof, and it shall be the duties of the commissioners and mayors of cities so to provide in regulations made under said act. Chap. 357 of 1884.

Five days after the enactment of the amendment above quoted, the legislature amended the original civil service law still further by passing chap. 410 of 1884.

Both enactments are to be construed together as being statute in *pari materia*, and so that election officers, inspectors of election and poll-clerk, shall remain exempt from examination, notwithstanding the provisions of the second amendatory act. People *ex rel* O'Brien *v.* French, 51 Hun, 345. They relate to the same subject matter, the regulation and improvement of the civil service throughout the state, and must be so interpreted as to give force to every provision they contain, if this is possible, as though all were found in a single act. The second statute contains no express words repealing the exemption established by the first. The general rule, that repeals by implication are not favored, applies with peculiar force in the case of acts passed at the same session of the legislature. Id.

The chief of the bureau of elections in the city of New York, in office on May 24, 1884, was not required by law to pass a civil service examination prior to his re-appointment. Id. But, though he is eligible to the appointment, without undergoing a civil service examination, he cannot lawfully be re-appointed if among the other qualified candidates there are honorably discharged Union soldiers or sailors. Id.

There are at least two statutes which entitle the veterans of the late war

to a preference. Chap. 29 of 1886 declares that they shall be preferred over all other persons for appointment to positions in the civil service of the state and of cities, though graded lower, upon examination, than others found eligible, provided that their qualifications and fitness shall have been ascertained as provided in the civil service act. It might be claimed that this provision gave them the preference only over other candidates who were required to be examined, and hence did not apply to the case of a person who is exempt from examination. But no such view can be taken of chap. 464 of 1887, which provides that, in every public department, and upon all public works of the state and of cities, towns and villages thereof, and also in non-competitive examinations under the civil service laws, rules or regulations, honorably discharged Union soldiers and sailors shall be perferred for appointment and employment. Id. All officials or persons having the power of appointment or employment in the public service are charged with the faithful compliance with the terms of the act, both in letter and spirit, and a failure therein is declared to be a misdemeanor. The statute constrains the board of police to prefer Union soldiers and sailors for appointment to the office of chief of the bureau of elections. It does not operate to deprive election officers, who were in office on May 24, 1884, of the benefit of the exemption conferred upon them by the act of that date. That exemption involves no right to a preference. It merely absolved them from a requirement which was or might be imposed upon other applicants for appointment. Id. The subsequent legislature in favor of Union veterans leaves unimpaired the statutory exemption of election officers to whom chap. 410 of 1884 applies. But it subjects them, as well as all other non-military candidates for appointment, to the preference which it gives to those who served honorably in the Union army or navy. Id.

The provisions of chap. 410 of 1884 were intended to improve the public service and make it more efficient. They are beneficent in their character and intended to benefit a class of persons who may be in some respects inferior, physically and mentally, to other applicants for the same service, provided such impairment does not disqualify them from performing the labor and duty which may be required of them in the position to which they may be appointed. People *v.* Wallace, 55 Hun, 149.

The language used is general and quite comprehensive, and evidently embraces other persons of the class mentioned than mere workmen or laborers. It is susceptible of the construction, and such was the legislative intention, that it should apply to all cases of appointment or employment of individuals on all the public works in all the cities, towns and villages of the state, who are not required, under the civil service laws, to submit to competitive examination as to their fitness and qualifications to fill the position for which they apply. Id.

The officials, having the power of appointment or employment in the public service, as prescribed in the act, are charged with the faithful compliance with its terms both in letter and in spirit. Id.

In People *v.* Wallace, *ante*, it was held that the complainant, who was

30

an honorably discharged Union soldier, was entitled to employment for himself and team in grading and improving the public streets of Auburn, in preference to others who were not discharged Union soldiers. When teams are used in grading and improving the streets and highways, it is giving employment, within the meaning of the act, to the owner. Id.

When a person applies to a public officer for appointment and employment under the provisions of the act, it is incumbent upon him to furnish satisfactory evidence that he belongs to the class of persons intended to be benefitted by the law. An officer cannot be charged with violating its provisions and be held to be guilty of a misdemeanor, in refusing employment to an applicant by declining to act upon his mere assertion, if such officer does not know, as a matter of fact from other sources, that the statement of the applicant is true. Id. Each case must be disposed of upon the evidence which the applicant is able to present and the actual information which the officer may possess on the subject. Id. The fact that the appointing officer did not place his refusal to employ the applicant on the ground that he did not know that the latter was an honorably discharged Union soldier, does not preclude him from taking the position upon the trial that the applicant did not furnish him with satisfactory evidence on the subject. Id.

The provision of the statute was intended as a guide and instruction to the officer, who possesses the power of appointment, requiring him, in disposing of applications presented to him, to administer the law in its spirit as well as its letter. It has no application whatever in a criminal trial; nor was it intended to change any rule of evidence, or of construction, in cases of criminal procedure founded upon the provisions of the act. Id.

*Act of* 1886.—§ 1, chap. 29 of 1886, is an amendment of § 4 of the act of 1884 and directs that persons honorably discharged, who served in the army or navy of the United States in the late war, shall be certified as such by the commissioners, for appointments to the appointing officer or other appointing power, and that such persons shall be preferred for appointment to positions in the civil service of the state and of the cities affected by this act and the several acts thereby amended, over all other persons, though graded lower than others, provided their qualifications and fitness shall have been ascertained under this and the several acts thereby amended; and the person thus preferred shall not be disqualified from holding any position in said civil service on account of his age, nor by reason of any physical disability, provided such age or disability does not render him incompetent to perform the duties of such position.

By § 8 of the act of 1883, the mayor of each city in the state having a population of 50,000 or over, as shown by the last census, was brought within the provisions of this law. As it was then enacted, it was not mandatory upon the several cities of the state, but it was permissive. But by § 8, as amended by chap. 410 of 1884, it was made mandatory upon the mayor of each city in the state, to prescribe regulations for the admission of persons into the civil service of such city. And he was directed, within

two months after the passage of the act to cause to be arranged in classes the several clerks and persons employed in the public service of the city of which he is mayor, and to include in one or more of such classes all subordinate clerks and officers in the public service of the city to whom his power under the act extended. After the termination of three months from the passage of the act of 1884, it was declared that no officer or clerk shall be appointed, and no person shall be admitted to, or be promoted in either of the said classes, now existing or that may be arranged hereunder pursuant to said rules, until he has passed an examination, or is shown to be exempt from such examination in conformity with such regulations. ·

Under the sanction and authority of these acts, the present rules and regulations have been adopted and followed for making appointments within the provisions of these laws.

These provisions are confined and limited to appointments as distinguished from promotions. Matter of McGuire, 50 Hun, 203.

They are not applicable to promotions of officers and members of the police force of the city of New York, which, under the provisions of § 271, chap. 410 of 1882, are to be determined upon the ground of meritorious police service and superior capacity. Id.

It was undoubtedly a defect in the act of 1884, when it secured a preference to positions in the civil service of the city, as well as the state, to persons who had been honorably discharged from the army and navy, that it confined the preference to appointments only and was not made to include promotions as they were mentioned in the other sections of the law. The same defect was continued in like manner by the enactment of chap. 29 of 1886. They accordingly cannot be held, in view of the language of the acts and the distinction preserved between appointments and promotions, to include the latter class of cases. Id.

It was the intention of the act of 1886 to relieve veterans of the late war from the disabilities, under which other persons who had not the same claim to recognition were resting in respect to holding office. It, therefore, provided that such persons should not be disqualified from holding any position in the civil service of the state on account of his age, or by reason of any disability, providing such disability did not render him incompetent to perform the duties of his office. People *ex rel.* Washburn *v.* French, 52 Hun, 464.

It cannot have been the intention of the legislature to place an applicant for an office in a better position than a veteran who had already been appointed; in other words, that a veteran, whose qualifications were not sufficient of themselves to require his appointment under the civil service act because there were others who might be better qualified, should be preferred over a veteran who had been appointed because his qualifications alone compelled his appointment. The legislature cannot be presumed to have intended to work such an injustice. If a construction can be adopted which gives force to the whole act and to an intention which does not work any injustice, such a construction must necessarily be adopted. Id.

The intention was to relieve veterans from the disqualification of age.

In making use of the words ".a person thus preferred " in the act of 1886, the legislature intended that such persons should not be disqualified from holding any position in the civil service on account of his age, not merely after he had actually been thus preferred for the purpose of appointment, but that he would, under the terms of the act, be entitled to such preference, if he could claim it, in case he was an applicant for appointment. Id.

Under any other construction, a member of the police force, who is removed on account of age, would have a right to apply, under the act, for reappointment, and the police commissioners would be required to reappoint him to the position from which he had been removed on account of age. This, of course, refers only to patrolmen, and not necessarily to the higher ranks of the service, which are required to be drawn from the lower positions of the force. It is clear that it was intended to relieve veterans from the disqualification of age. As a consequence, the power of the commissioner to remove a veteran, because he has reached the age of sixty, was thereby repealed. Id.

In this case, the relator was appointed a patrolman in 1856. In 1862 he entered the army and served during the war, and at its close was honorably discharged. In 1865 he was again appointed a patrolman and continued to be a member of the force until June, 1887, when he had attained to the rank of captain. At this time he was dismissed and placed on the roll for the police pension fund, for the reason that he had reached the age of sixty years. It was held that, under the provision of chap. 29 of 1886, such age does not render him incompetent to perform the duties of the position, and that a dismissal of the relator from the police force simply upon the ground of his age was improper.

*Act of* 1887.—§§ 1 and 2, chap. 464 of 1887, read as follows: § 1. In every public department and upon all public works of the state of New York, and of the cities, towns and villages thereof, and also in the non-competitive examinations under the civil service laws, rules or regulations of the same wherever they apply, honorably discharged Union soldiers and sailors shall be preferred for appointment and employment; age, loss of limb or other physical impairment, which does not in fact, incapacitate, shall not be deemed to disqualify them, provided they possess the business capacity necessary to discharge the duties of the position involved.

§ 2. All officials or other persons having power of appointment to or employment in the public service as set forth in the first section of this act are charged with a faithful compliance with its terms, both in letter and spirit, and a failure therein shall be a misdemeanor.

The provisions of the act of 1887 should be observed and faithfully carried out. It voices the public feelings of all citizens that the survivors of the brave soldiers, to whom the country is indebted for the preservation of its institutions, should be remembered and preferred in the distribution of public offices. People *ex rel.* Lockwood *v.* Saratoga Springs, 54 Hun, 16.

The act of chap. 464 of 1887 provides that honorably discharged Union soldiers shall be preferred for appointment and employment. It means that, where two or more apply for an office, one of whom is a discharged

Union soldier, and all are equally qualified, the soldier shall be preferred, but not where the soldier is not as well qualified for the office as one of the other applicants. Id. One candidate may barely be able to perform the duties of the office in a reasonably proper manner, and another may have superior qualifications and be able to do the work much better. In such a case, the appointing power, under the law, will not be bound to appoint the former, though a discharged Union soldier. Id.

In this case, though the trustees were bound to prefer a soldier in making appointment to the office of superintendent of public works, they were held not bound to appoint one whom they deemed incompetent, or where the other candidate possessed superior qualifications for the office. The law conferred upon them the power and duty of deciding as to the qualifications of the relator and the other candidates. When they have passed upon the question against the relator, their decision is final, whether right or wrong. Id.

In People *ex rel.* Stephens *v.* Bardlen, 55 Hun, 612, the fitness of the relator for the position he desired, as well as the fact that he was an honorably discharged Union soldier, was conceded. No question was raised as to his qualifications for the office. In this respect, the case is entirely unlike People *ex rel.* Lockwood *v.* Saratoga Springs, *ante.*

Chap. 464 of 1887 imposes upon public officials a specific duty, and confers upon individuals a specific right. Matter of Sullivan, 55 Hun, 285. It is impossible to read this act without a realizing sense of the legislative determination to secure to honorably discharged soldiers and sailors, the contemplated preferment. All public officials are charged with the faithful compliance with its terms; and the veterans are not to be deemed as disqualified by age, loss of limb, etc. This amounts substantially to a legislative command, directed to the heads of departments, requiring the performance of a particular duty in a particular manner. This brings the case within one of the principles peculiarly applicable to mandamus. The duty is a public one, and individuals, who have a clear right to its performance, are without adequate remedy at law to secure such performance or to enforce their rights. The legislature did not intend to leave the objects of its very special consideration without a direct remedy for its practical performance. The application of ordinary remedies against derelict officials will not suffice adequately to enforce this law, as it is required to be enforced both "in letter and spirit." Id.

The legislature has guaranteed employment to the capable veteran where there is need of service. The courts should treat that guarantee as vital and as importing an active right to be enforced in favor of the individuals embraced within the class, in the same broad and untechnical spirit as that imposed by the act itself upon the officials charged with its execution. Id.

Individuals, who have a clear right to a preference under the provisions of the statute, were held in Matter of Sullivan, *ante*, to be entitled to apply for a writ of mandamus to secure and enforce their rights.

The veteran's right to preferment depends upon the fact that he is an

honorably discharged soldier, not upon the official's willingness or unwillingness to credit such fact. Id.

The act is sufficiently comprehensive to embrace ordinary laborers. There is no word of limitation, and nothing in the expression " employment upon all public works of the state of New York, and of the cities, towns and villages thereof," to justify the idea of exclusion by implication. The phrase " employment upon the public works " includes those who do most of the work. The proviso " business capacity necessary to discharge the duties of the position involved," does not have the effect of limiting the employment of veterans to business positions. Id. The purpose is rather to qualify them for such positions, when, in spite of age, etc., sufficient capacity exists to discharge the duties. What is meant is that physical incapacity, compatible with the due performance of non-physical duties, shall not disqualify for non-physical employments. Id.

*Assessor's clerk.*—Where a person has been appointed a clerk in the assessor's office in the city of Buffalo, without first having passed a civil service examination, and without being certified by the civil service commissioners, in violation of chap. 354 of 1883, as amended by chap. 410 of 1884, he cannot enforce payment of his salary. Neither will a mandamus lie to compel the mayor to sign the warrant for his salary, though such warrant had been directed to be drawn by the common council and was signed by the city clerk. Matter of Gaffney *v.* Becker, Super. Ct. of Buff., Jan., 1889. The appointment of such a clerk is within the provisions of the civil service act. The fact that, by an ordinance of the common council, the assessors were required to file a bond for the faithful performance of their duties, does not place such appointment within the exception of the act, which provides that, " officers elected by the people and the subordinates of such officers, for whose errors or violation of duty such officer is financially responsible, . . . . shall not be subject to the regulations prescribed pursuant to the section." Id. The duties of the assessor's clerks are purely clerical. Their acts have no public character, and the assessors are not liable for their acts, except so far as they ratify and make them their own. Id.

*Collector of taxes.*—In People *ex rel.* Stephens *v.* Barden, *ante*, it was held that a peremptory mandamus cannot be granted requiring the appointment of an honorably discharged Union soldier to the office of collector of taxes of the city of Ithaca. The decision in this case followed that in People *ex rel.* Hall *v.* Little Falls, 54 Hun, 638.

A person to entitle him to an appointment or employment, must be not only an honorably discharged Union soldier, but also fit, competent and of sufficient business capacity to perform the duties of the position. People *ex rel.* Hall *v.* Little Falls, *ante.* Whether the relator possessed these qualifications was the duty of the trustees of defendant to determine. Such determination is judicial, and cannot be reviewed, reversed or directed by a mandamus. Id.

*Clerk.*—A clerk in a department of the city of New York was held, in People *ex rel.* Higgins *v.* Grant, 59 Hun, 625, to be entitled to no

greater right, on a proceeding to remove him, because of rule 40 of the civil service rules, which renders persons dismissed for misconduct ineligible for appointment within three years.

*Commission. Secretary.*—Authority to employ a person to perform the duties of secretary to the local civil service commission was held, in Kipp *v.* City of Buffalo, Super. Ct. Buff., Nov., 1889, to be conferred on the mayors of cities by the civil service act.

The language of the statute is "employ suitable persons to conduct such inquiries and make examinations." It is not limited to examiners alone, but embraces persons suitable to conduct such inquiries. The proper conduct of the inquiries and examinations make it quite as necessary that records should be kept as that examinations should be made. Id. The only test of the right to employ is suitableness and necessity; not what the person so employed shall be called. The duties required of the commission demand the employment of a person to perform the services of secretary. Authority to employ such person is fairly embraced within the spirit, and is conferred by the terms of the act. Id.

*Constitutional.*—The constitutionality of chap. 464 of 1887 is reasonably free from doubt. Matter of Sullivan, 55 Hun, 285. It does not seek to abridge rights guaranteed by the constitution. Neither does it discriminate as to eligibility to or qualification for office. It simply regulates the agencies for service upon the public works of the municipality. Id. The legislature may lawfully provide for the doing of public work in such manner and with such agencies as it deems proper. There is no provision of the constitution which confers upon any citizen a right to appointment or employment upon such works, or which limit the legislative choice as to the appropriate means of such performance. Id.

It was held in People *ex rel.* Killeen *v.* Angle, 109 N. Y. 564, that the subordinates, whom the superintendent of public works is authorized to appoint under the provisions of the state constitution, as amended in 1873, do not come under the act creating the civil service commission (Chap. 354 of 1883); and that the said act and the rules promulgated under it, so far as they attempt to entrench upon this power of appointment, are inoperative and void.

*Court crier.*—Judges of the Superior Court of Buffalo were held, in People *ex rel.* Ellithorpe *v.* Judges, etc., 56 Hun, 643, to have power to remove an honorably discharged Union soldier, from the office of crier of said court.

This decision was based upon chap. 243 of 1888, which took effect subsequent to chap. 119 of 1888, and continued the power to remove at pleasure.

§§ 1, 2, chap. 119 of 1888 read as follows : § 1. No person holding a position by appointment in any city or county of this state, receiving a salary from such city or county (unless he has been appointed for a definite term), who is an honorably discharged soldier, sailor or marine, having

served as such in the Union army or navy during the war of the rebellion shall be removed from such a position, except for cause shown after a hearing had; but this provision shall not be construed to apply to the position of private secretary, or chief clerk, or deputy of any official.or department, or to any other person holding a confidential relation to the appointing officer.

§ 2. All laws, or parts of laws, inconsistent with the provisions of this law, are hereby repealed.

*Court interpreter.*—The right to appoint an interpreter to the general sessions in New York city was held, in Cutugno *v.* Mayor, etc., 58 Super. Ct. 567, to be vested in the recorder, city judge and judge of the court of general sessions, and that such appointments were not governed by the civil service law.

*Health and street inspector.*—In People *ex rel.* Snyder *v.* Summers, 56 Hun, 644, the relator was an honorably discharged Union soldier and competent to perform the duties of inspector of health and street. His name, with others, was certified by the civil service commission to the street commissioner to fill vacancies in his office. The persons so named were appointed by the commissioner and such appointments transmitted to the common council. They were referred to a committee, and, on its report, its recommendation that they be not confirmed, was adopted. The relator applied for a mandamus to compel the common council to confirm his appointment. It was held that a mandamus for this purpose would not lie; that it is only when the common council refuses to act on the appointment, that the court is justified in interfering.

*Inspector and superintendent.*—§ 40, chap. 490 of 1883 has not been superseded by the civil service act, Matter of Brown *v.* Duane, 60 Hun, 98. Its provisions in regard to the appointment of inspectors and superintendents cannot be deemed to be repealed. Id. There is no intention manifested in the civil service act that, in appointments which are considered of such importance as to require at least three members of the commission to certify to the competency of the applicant, such safeguard should be repealed by its general language. Id. Persons who are certified by the members of the commission as competent and fit for the duties of the position, must also undergo a civil service examination. Id. But it is the plain intention of the legislature that no person shall have the responsible position of inspector or superintendent of the Croton Aqueduct without making at least a moiety of the commission personally responsible for his appointment. The commissioners are required to certify that the applicant is competent and fit for the duties of the office and experienced in the subject-matter of the employment, and the responsibility is thus placed upon them for the quality of appointees of this class. The legislature, after establishing such safeguards against the abuse of the appointing power in reference to such appointment, have not intended to place these appointments upon the same level as all others to which the civil service act could apply. Id.

*Janitor.*—On application for a writ of mandamus to compel an appointment as janitor and engineer of a public school in the city of New York, by an honorably discharged Union sailor, the application to be successful, must establish the fact mentioned in § 1, chap. 464 of 1887, that the applicant possesses the business capacity necessary to discharge the duties of the position desired. People *ex rel.* Waterman *v.* Knapp, 52 Hun, 611. If that is denied, on the part of the officers proceeded against, the fact must be proven and maintained the same as it is required to be for the successful maintenance of such a proceeding in all classes of cases. The officers are not bound to accept and act upon the unsupported statement of the applicant himself. They may require, where they do not deem that to be sufficient, further proof from reliable sources, supporting the case of the applicant. Id.

*Laborer.*—In Higgins *v.* Mayor. etc., 60 Hun, 578, plaintiff who was employed by the city as a laborer, was discharged from his position. He afterwards was restored on the ground that his discharge was unlawful under chap. 464 of 1887. He brought an action to recover wages for the time he remained necessarily unemployed. It was held that the employment and payment of another in his place were no defense ; and that the discharge, being entirely without right, could not deprive him of the emoluments of his employment.

When a laborer, or other person, may be employed by a public or private corporation, or by an individual, to render personal services, and he has been unlawfully discharged, he is entitled to the stipulated compensation for his services during the time he is necessarily unemployed. The employment and payment of another person have never been allowed as a defense for the employer. These cases have been uniformly held to depend upon the fact that the discharge was without legal cause. When it appears to have been so, the employer has been uniformly held to be liable. Id.

*Lamp clerk.*—In People *ex rel.* Wardrop *v.* Adams, 51 Hun, 583, the relator was an honorably discharged veteran from the Union army. He had held the position of lamp clerk in the department of city works, in the city of Brooklyn, but was removed from his position by the commissioner. The latter had abolished the position upon economical grounds, and attached the duties of that office to those of a clerk who held the office of assistant notice and complaint clerk. The latter clerk had since performed the duties which had been formerly done by relator as well as those done by himself before the reorganization of the office. No claim was made that the commissioner did not act in good faith. Relator claimed that the entire office, as reconstructed, should have been given to him, under the provisions of chap. 708 of 1887. It was held that such claim could not be sustained; that the spirit of that act did not require that, if an office was abolished, the incumbent, if a veteran, should displace another officer who was not a veteran.

*Lamp inspector.*—The common council of the city of Rochester, by resolution, authorized the mayor to make a contract with Belknap, requiring

him to examine all street lamps, and their location, assist the lamp committee in the designation and location of such lamps, keep a book of record of such lamps, and electric lights during the term of such contract, together with the number of such lamps and lights and location and time not burning, etc., report to the committee and common counsel all the details connected with such lamps and lights, and to examine into any and all complaints in relation thereto. The resolution also provided for the payment of Belknap for his services as "lamp inspector," and for his giving security for his faithful performance of the aforesaid matters. It was held that, in discharging such duties, he was a clerk in the civil service of the city, and the civil service act prohibited his employment until he had passed the requisite examination. Peck *v.* City of Rochester, 18 St. Rep. 244.

*Police court clerk.*—The clerk of the police court in Brooklyn is within the exception to chap. 119 of 1888. This exception reads as follows ; " but such provision shall not apply to the position of private secretary, chief clerk or deputy of any official or department." People *ex rel.* Wren *v.* Goetting, 55 Hun, 611. Such clerk is a chief clerk, and may, under this act, be removed without notice or hearing. Id.

This act was intended to protect the veteran or discharged soldier in all the subordinate administrative or clerical positions. The rule does not extend to independent officers or even to those who stand in the next highest position to such officers and may at times have the power to act as their substitutes or deputies. Id.

*Salary.*—Dolan *v.* Mayor, etc., 68 N. Y. 275; McVeany *v.* Same, 80 Id. 185; Terhune *v.* Same, 88 Id. 247, are cases of public officers unlawfully removed, having fixed salaries assigned by law for the incumbent of the office. And it was held that payment of the salaries to the person actually in the office for the time, was a defense against the action of the rightful official for its subsequent recovery. .

The plaintiff in Higgins *v.* Mayor, *ante*, was not an official nor the occupant of an office. The case is substantially one of contract and not of official selection or appointment. His employment resulted from his preceding honorable service as a Union soldier and his selection for this position. The law then assurred him a preference in its continuance. This is the plain language of chap. 484 of 1887. Id.

By chap. 354 of 1883, as amended by chap. 410 of 1884, very definite and broad provisions were first made to regulate the civil service of the state, and to provide for promotion and appointments to certain public offices. This, so far as the laws were rendered applicable, was to be done by open and competitive examinations, testing the fitness of the applicants for appointment in the public service. It was not in the first instance, rendered obligatory upon the city, but the mayor was vested with the authority, to provide rules and regulations for carrying its provisions into effect in the official civil service of the city so far as the officers designated and mentioned in it were concerned. People *ex rel.* Wright *v.* Common Council, 16 Abb. N. C. 96.

But by § 2, chap. 410 of 1884, the mayor of the city was no longer left

at liberty to exercise his volition upon this subject. The duty was made mandatory, and he was not only authorized, but directed, to prescribe such regulations as had previously been indicated in the law of 1883, or to continue and carry into effect those which had been previously adopted. Id. To carry out the design and intention of the law, it was provided that the mayor shall from time to time employ suitable persons to conduct such inquiries and make examinations, and shall prescribe their duties and establish regulations for the conduct of persons who may receive appointments in the said service. Id.

The directions are so clear and positive as to leave the mayor no discretion upon the subject, but he must, from time to time, employ suitable persons to conduct the examination and make the inquiries required. But neither this act, nor the one preceding it, contains any express provision for compensating the person to be so employed by the mayor. Id. By requiring the mayor to employ suitable persons to perform these services, it is to be implied from the language that it was intended that they should be reasonably remunerated for such services. Id. Where the law requires a thing to be done, it authorizes the performance of whatever may be necessary for executing its commands. Id.; Stief *v.* Hart, 1 N. Y. 20. The case of Baker *v.* City of Utica, 19 N. Y. 326, is an authority in favor of the right of persons rendering services to a municipal corporation to be compensated for the value of such services, where no specific provision of law has been made declaratory of the right or extent of compensation.

By omitting to provide the manner in which the money should be obtained to make this compensation, the end and purpose of the law are not to be defeated. The funds required to remunerate the employee are necessarily a charge upon the city as all other expenses of the municipal government have been made by the charter. Id.

*Secretary.*—The mayor of the city of Buffalo has authority, under the civil service acts, and the regulations prescribed by him and approved by the state civil service commission, to appoint a secretary to the city commission. Kip *v.* City of Buffalo, 123 N. Y. 152.

*Street inspector.*—A street inspector, though a subordinate of the street commissioner, was held, in Rogers *v.* Common Council, 22 Abb. N. C. 144, not to be excepted from the civil service law, if, as in Buffalo, the bond of the commissioner does not cover misconduct of the inspector. The inspector is not a laborer or workman within the designation contained in § 7, chap. 354 of 1883. He is included among the officers of the city in the charter. As such, under § 8, chap. 354, of 1883 and 410 of 1884, he is within the rules and regulations of the civil service of the city, as they have been prescribed and promulgated under the authority of these laws. Id.

*Temporary clerk.*—In People *ex rel* O'Connor *v.* Adams, 53 Hun, 141, the department of public works of the city of Brooklyn made a requisition for the service of four temporary clerks. The names of the relator and of three others were furnished by the civil service commission.

Of these the relator was the only discharged soldier. All the parties were appointed. Subsequently, the business decreased and the relator was discharged. The other three clerks were retained under the appointment. It .was held that the legislature, by chap. 464 of 1887, intended that, in such case, the soldier should be discharged last of the temporary clerks so appointed, and that he was entitled to a mandamus directing that he be reinstated in the position from which he had been removed.

If all these temporary clerks had been discharged, the case would have fallen within People ex rel. Wardrop v. Adams, ante. It was held in that case that the city was not bound to continue an employment which had become a sinecure. But the question in People ex rel. O'Connor v. Adams, ante, was different. Four clerks had been appointed to a temporary position and for no definite term. The soldier had the preference in the appointment. The legislature, by employing the language that soldiers should be preferred for appointment and employment, intended that the relator should be discharged last of the four temporary clerks, when he was the only soldier on the list. Id.